The appellant, Betty Hedge ("Betty"), appealed to this Court seeking a reversal of the August 13, 1992, judgment of the Lee County Circuit Court affirming the Workers' Compensation Commission's denial of benefits to her. We reverse, determining that once the employee made out a prima facie case of disability, the burden of proof shifted to the employer, and the employer failed to rebut affirmative evidence of a causal connection between the workplace and the injuries, as well as resulting disability, sustained by the employee.
 I.
Betty was the claimant seeking workers' compensation benefits in the hearings below. At that time, she was a forty-one year old unskilled laborer previously employed by one of the appellees, Leggett Platt, Inc. ("Leggett Platt"), where she worked on the "glue line" for a short period of time and sewed pillowcases stuffed with polyurethane foam ("polyfoam") for the majority of her employment with Leggett Platt.
A smoker since the age of nine, Betty had a history of respiratory problems prior to her employment with Leggett 
Platt. However, after working at Leggett Platt for over three years and suffering from pneumonia, emphysema, asthma, and other respiratory problems severe enough to require hospitalization on three separate occasions, Betty's doctor recommended that she only work in a "clean air" environment and that she should not return to work at Leggett Platt. Betty did not return to work at Leggett Platt and has not been able to secure work elsewhere. She has been permanently and totally disabled since her last day of work at Leggett Platt.
 II.
Betty claimed that her injuries occurred, or were manifested, in May of 1988, February of 1989, and July of 1989, while she was employed at Leggett Platt. She asserted that her injuries resulted from inhalation of workplace irritants: microscopic polyfoam dust particles and toluene diisocyanate ("TDI"), which were both present at the Leggett Platt plant.
According to Betty, polyfoam dust particles would get on her clothes, in her hair, nose and throat. While she was working at the Leggett Platt plant, Betty experienced respiratory attacks on multiple occasions, some more severe than others. Usually, the attacks would cause her pain on her side or lower back, progressing to coughing and wheezing to the point where Betty could not get her breath. She was required to be hospitalized after some of the attacks, and after one such attack, Betty was forced to miss two or three weeks of work.
A co-worker of Betty's, Beatrice Merritt ("Merritt"), testified that she could see dust in the air at the workplace area where they were stationed. Merritt stated that the dust got on her clothes and in her hair, and that she had to remove it by blowing it off with an airhose and brushing it out of her hair. According to Merritt, Betty's breathing problem seemed to flare up every 2 or 3 months.
After her last respiratory attack at Leggett Platt on July 28, 1989, Betty did not return to work. Since that time, she has been unable to physically exert herself longer *Page 11 
than five minutes without the possibility of collapsing. Additionally, Betty's doctor, Dr. Benjamin Moore, has restricted Betty's work to employment in places with a "clean air" environment. She has attempted to obtain employment, but, for the foregoing reasons, neither Betty nor the vocational counselor with which she consulted has been able to find suitable employment for her.
Betty went so far as to respond to a subsequent newspaper advertisement by Leggett Platt which sought workers for the Leggett Platt plant. However, whenever she telephoned Leggett 
Platt to request an application or an interview, the Leggett 
Platt representative replied that Leggett Platt was not interested in allowing her to come back to work or submit an application.
 III.
Workers' compensation benefits were sought by Betty. She claimed that she inhaled irritants present in her work environment which caused or exacerbated her respiratory problems. As a consequence, a hearing was held before a Workers' Compensation Commission administrative judge to determine the propriety of awarding workers' compensation benefits to Betty.
Dr. Benjamin Moore testified as Betty's medical expert. He stated that he or his partner admitted Betty to the hospital as a result of her respiratory problems on May 9, 1988, during February of 1989, and again in August of 1989. Dr. Moore diagnosed Betty's problems as pneumonia, chronic emphysema, and asthma. As a result of her respiratory problems, Betty's lung capacity (expiratory flow rate) was diminished by sixty-seven percent (67%).
In Dr. Moore's opinion, neither Betty's pneumonia nor her emphysema were work related. However, Dr. Moore diagnosed Betty's workplace respiratory attacks as "bronchospasms," caused by exacerbation of her asthma. He stated that Betty's problems were compatible with aggravation of asthma by polyfoam or glue.
As mentioned earlier, Betty had been a smoker for most of her life, and evidence at trial substantiated the fact that smoke is a significant asthma irritant. Nevertheless, Dr. Moore attributed a proportion of the aggravation of Betty's asthma problems to her work environment at Leggett Platt, testifying that, "[f]rom her history, TDI exposure was a factor in her asthma exacerbations as well." Dr. Moore also stated that, "[i]f I had to assign a percentage of her work exposure as a contributing factor to her bronchospastic lung disease, the difficulty that she's had over the years, I would say that 20% would be a reasonable estimate."
The testimony of Dr. Moore established a causal connection between the exacerbation of Betty's respiratory problems and her work environment, while Betty's uncontroverted testimony established that her injury arose out of and in the course of her employment at Leggett Platt. Further, Betty provided overwhelming evidence that, since the workplace aggravation of her respiratory problems, employment was not available to her. At that point, Betty made out her prima facie case of disability, and the burden of proof shifted to Leggett Platt. PontotocWire Products Co. v. Ferguson, 384 So.2d 601 (Miss. 1980);Thompson v. Wells-Lamont Corp., 362 So.2d 638 (Miss. 1978).
Dr. Robert Norwood Jones testified as the medical expert for Leggett Platt and Continental Casualty Company. The substance of Dr. Jones' medical testimony was that, it was possible, but not likely, that there was occupational aggravation in Betty's case. However, when questioned, Dr. Jones would not affirmatively testify that irritants at Leggett Platt's plant did not
aggravate Betty's asthma. Instead, he stated that the cause of her condition could not be determined, nor could any particular triggering influence be identified. Consequently, according to Dr. Jones, there was "insufficient evidence" upon which he could base a medical conclusion that Betty's workplace caused or aggravated her asthma.
That testimony of Dr. Jones did not embrace evidence which contradicted Dr. Moore's statements that Betty's workplace environment at Leggett Platt contributed to her respiratory problems. Absent affirmative testimony to the contrary, Dr. Moore's testimony remained uncontroverted *Page 12 
and satisfied the burden of proving a causal connection between Betty's workplace and the exacerbation of her asthma.
Nevertheless, after the hearing, the administrative judge executed an order denying and dismissing Betty's claims for workers' compensation benefits. Subsequently, the full Mississippi Workers' Compensation Commission ("Commission") heard arguments on the matter but denied disability benefits. Thereafter, Betty appeals to the Lee County Circuit Court which affirmed the decision of the Commission. Aggrieved, Betty filed the instant appeal.
 IV.
Two of the issues raised on appeal by Betty merit discussion and are stated as follows:
 WHETHER THE LOWER COURT COMMITTED REVERSIBLE ERROR IN NOT FINDING THAT CLAIMANT SUSTAINED A COMPENSABLE INJURY AS A RESULT OF HER ON-THE-JOB INJURY WITH HER EMPLOYER. WHETHER THE LOWER COURT COMMITTED REVERSIBLE ERROR IN NOT AWARDING COMPENSATION BENEFITS AND MEDICAL BENEFITS AS A RESULT OF CLAIMANT'S ON-THE-JOB INJURY.
Whether Betty suffered a compensable work-related injury is the pivotal question at the core of the two issued considered in the case sub judice. Thus, those issues are considered together.
 A.
The appropriate appellate standard to be employed in the review of workers' compensation decisions is well-settled:
 The findings and order of the Workers' Compensation Commission are binding on this Court so long as they are "supported by substantial evidence". Fought v. Stuart C. Irby Co., 523 So.2d 314, 317 (Miss. 1988); Champion Cable Const. Co., Inc. v. Monts, 511 So.2d 924, 927 (Miss. 1987); Penrod Drilling Co. v. Ethridge, 487 So.2d 1330, 1332 (Miss. 1986); Georgia-Pacific Corp. v. Veal, 484 So.2d 1025, 1027 (Miss. 1986); Evans v. Marko Planning, Inc., 447 So.2d 130, 132 (Miss. 1984); see also Dunn, Mississippi Workers' Compensation § 286, 288 (3d ed. 1982). "This is so, even though the evidence would convince this Court otherwise, were we the fact-finder." Fought, 523 So.2d at 317; Georgia-Pacific Corp., 484 So.2d at 1028 (quoting Olen Burrage Trucking Co. v. Chandler, 475 So.2d 437, 439 (Miss. 1985)). This Court will reverse an order of the Workers' Compensation Commission only where such order is clearly erroneous and contrary to the overwhelming weight of the evidence. Fought,
523 So.2d at 317; Myles v. Rockwell International, 445 So.2d 528, 536 (Miss. 1983); Riverside of Marks v. Russell, 324 So.2d 759, 762 (Miss. 1975).
Mitchell Buick v. Cash, 592 So.2d 978, 980 (Miss. 1991).
In the administrative judge's findings, which were apparently adopted by the Commission, the administrative judge found that:
 1) The average weekly wage of Betty was $210.10;
 2) After consideration of the medical evidence, Betty failed to meet the burden of proof required to establish that she suffered any injurious exposure while employed with Leggett Platt or that she suffered an occupational disease related to her employment;
 3) The greater weight of the medical evidence established that Betty suffered from pre-existing medical conditions of emphysema and asthma which were unrelated to her employment; and,
 4) Betty has been permanently and totally disabled since July 29, 1989.
Only the finding that Betty did not suffer an injurious exposure while employed by Leggett Platt is seriously contested. That finding inherently and logically requires a concomitant implicit finding that no causal connection existed between Betty's respiratory problems and her workplace. However, substantial evidence in the record does not support that proposition.
 B.
The elements of a claim, on which a claimant such as Betty bears the burden of *Page 13 
proof, have previously been explained in another case. There we stated that:
 In a workers' compensation case, the claimant bears the burden of proving by a "fair preponderance of the evidence" each element of the claim. Bracey v. Packard Elec. Div., Gen. Motors Co., 476 So.2d 28, 29 (Miss. 1985). These elements are: (1) an accidental injury, (2) arising out of and in the course of employment, and (3) a causal connection between the injury and the death or claimed disability. Miss. Code Ann. §§ 71-3-3 -7 (1972); V. Dunn, Mississippi Workers' Compensation § 265 (3rd ed. 1982); see also Strickland v. M.H. McMath Gin, Inc., 457 So.2d 925, 928 (Miss. 1984).
Hardin's Bakeries v. Dependent of Harrell, 566 So.2d 1261, 1264 (Miss. 1990). But, once the claimant makes out a prima facie case of disability, the burden of proof shifts to the employer.Pontotoc Wire Products Co. v. Ferguson, 384 So.2d 601 (Miss. 1980); Thompson v. Wells-Lamont Corp., 362 So.2d 638 (Miss. 1978).
Leggett Platt does not contest the administrative judge's finding that Betty has suffered permanent and total disability. Neither does Leggett Platt seriously controvert the evidence establishing the fact that Betty suffered acute respiratory problems at the Leggett Platt plant while she was employed there. The origin of the problem stems from the administrative judge's finding that Betty suffered from the pre-existing medical conditions of emphysema and asthma which were unrelated to her employment. Based upon that finding, the administrative judge apparently concluded that Betty did not suffer an injurious exposure while employed with Leggett Platt. The finding that Betty did not suffer an injurious exposure at the Leggett Platt plant suggests that the respiratory attacks which she experienced while working there emanated solely from her pre-existing conditions and were not workplace "exacerbations" of those pre-existing conditions. That conclusion is erroneous, unsupported by substantial evidence.
 1. An Accidental Injury
Betty's testimony was uncontroverted with regard to the pain and shortness of breath which she experienced while working in the pillow and mattress departments at Leggett Platt in May of 1988, February of 1989, and on July 28, 1989. She described incidents which consisted of the onset of pain in her side and back, along with shortness of breath, while she was performing her assigned duties at Leggett Platt. The validity of these incidents was corroborated by Merritt, one of her co-workers. Leggett Platt did not contradict Betty's contention that the incidents at work occurred as she claimed. Consequently, Betty satisfied the burden of proving that she suffered an accidental injury while at work.
 2. Arising Out Of and In The Course of Employment
Kathy Campbell, a Leggett Platt employee, testified that no pre-employment physical was performed on Betty and that Leggett 
Platt did not have any medical proof that Betty suffered a pre-existing respiratory problem which affected her work. She stated that Leggett Platt's employment records did not indicate that Betty was not able to satisfactorily perform her job before the respiratory attack in May of 1988.
Although Dr. Moore testified that there was not a strong work-related causal connection between Betty's pneumonia and emphysema, he did indicate that irritants in Betty's workplace had exacerbated her asthma. As we have stated before, an injury arises out of and in the court of employment even if it amounts to aggravation or exacerbation of a pre-existing condition. That proposition was expressed in a prior case before this Court, wherein we stated:
 The work connection test arises from Miss. Code Ann. § 71-3-7 (1972). The worker's employment, however, need not have been the sole source of the injury. The claim is compensable if the injury or death is in part work connected. Injury or death arises out of and in the course of employment even when the employment merely aggravates, accelerates or contributes to the injury. See Dunn, Mississippi Workers' Compensation § 164 (3d ed. 1982). *Page 14 
Chapman, Dependents of v. Hanson Scale Co., 495 So.2d 1357, 1360 (Miss. 1986) (citations omitted).
Confirming the compensability of aggravation of pre-existing conditions, in a recent case we said that:
 This Court has stated with respect to the effect of preexisting conditions in the determination of disability benefits following a work-related injury:
 The rule in this State is that when a preexisting disease or infirmity of an employee is aggravated, lighted up, or accelerated by a work-connected injury, or if the injury combines with the disease or infirmity to produce disability, the resulting disability is compensable.
McNeese v. Cooper Tire and Rubber Co., 627 So.2d 321, 324 (Miss. 1993) (quoting Rathborne, Hair Ridgeway Box Co. v.Green, 115 So.2d 674, 676 (Miss. 1959)).
Further, any increased susceptibility of Betty to aggravation or irritation of her pre-existing asthma should not be weighed against her in determining whether a workplace injury arose out of and in the course of employment. As we stated in a prior case:
 A familiar concept in workers' compensation law is that the employer takes the worker as the worker is found — with all the strengths and weaknesses the worker brings to the job. This includes physical strengths and weaknesses. If a lame worker suffers an employment fall and is injured, the injury is said to arise out of and in the course of employment under the same test applied for workers not lame. By the same token, if an awkward worker stumbles and falls, the rule is the same as if the worker were agile.
Chapman, Dependents of v. Hanson Scale Co., 495 So.2d 1357, 1360 (Miss. 1986) (citations omitted). Specifically addressing asthma as a pre-existing condition, in another case we stated that, "[a]lthough Jenkins' [claimant's] prior asthmatic condition may have played a part in his ultimate disability, it is well settled that where a claimant's employment contributes to his condition, the injury is compensable." Jenkins v. Ogletree FarmSupply, 291 So.2d 560, 563 (Miss. 1974).
Dr. Benjamin Moore, Betty's medical expert, provided the only
affirmative testimony bearing on the issue of causation of Betty's respiratory problems. Dr. Moore testified that Betty's work exposure was a contributing factor to her respiratory problems; that the polyfoam, TDI, and glue contributed toexacerbation of Betty's asthma. Leggett Platt's only
evidence bearing on the issue of workplace causation consisted of Dr. Jones' testimony. But, he did not state that workplace exacerbation of Betty's asthma did not occur. Instead, he sidestepped a direct confrontation of that crucial issue, testifying that, it was possible, but not likely, that irritants in Betty's work environment at Leggett Platt aggravated her respiratory problems. He justified his straddled position by testifying that it was not possible to ascertain the cause ofBetty's condition because insufficient evidence existed uponwhich he could base a medical conclusion concerning workplaceexacerbation of Betty's asthma.
Dr. Jones' testimony was deficient for purposes of rebutting the affirmative testimony of Dr. Moore. In other words, Dr.Jones' non-committal testimony amounted to no evidence at all
for purposes of rebutting causation of the exacerbation of Betty's asthma as established by Dr. Moore.
Therefore, since Betty, an asthmatic, was exposed to irritants in her work environment which aggravated her condition, her injury arose out of and in the course of her employment.
 3. A Causal Connection Between the Injury and Disability
The "causal connection" element is closely related to the "arising out of and in the course of employment" element. "With reference to causation, we have said: `An injury arises out of the employment when there is a causal connection between it and the job.'" Jenkins v. Ogletree Farm Supply, 291 So.2d 560, 563 (Miss. 1974) (quoting Earnest v. Interstate Life AccidentInsurance Co., 238 Miss. 648, 119 So.2d 782, 783 (1960)).
Irritants in the work environment which aggravated Betty's asthma need not have been the "primary" causative factor in *Page 15 
order to be compensable. It is only necessary that the workplaceirritants did, in fact, aggravate Betty's asthma. IngallsShipbuilding Corp. v. Howell, 221 Miss. 824, 74 So.2d 863
(1954). In the case sub judice, the fact that Betty's workplace environment exacerbated her respiratory problems and contributed to her resulting disability was affirmatively established by the medical testimony of Dr. Moore.
Therefore, Betty made out her prima facie case, establishing that an injury arising out of and in the course of employment occurred, and that a causal connection existed between the injury and her claimed disability. Hardin's Bakeries v. Dependent ofHarrell, 566 So.2d 1261 (Miss. 1990). As mentioned supra, at that point the burden of proof shifted from the employee/claimant to the employer. Pontotoc Wire Products Co. v. Ferguson,384 So.2d 601 (Miss. 1980); Thompson v. Wells-Lamont Corp.,362 So.2d 638 (Miss. 1978).
The employer, Leggett Platt, did not adduce evidence which rebutted Betty's prima facie case. Their medical expert, Dr. Jones, stated that it was possible that Betty's asthma was aggravated by her work environment at Leggett Platt. However, he would not commit to a firm position on the issue, therefore, he did not contradict the testimony of Dr. Moore.
A claimant's proof on the issue of causal connection must rise above mere speculation or possibility, as "where the medical testimony is that it could have been one way just as well as the other." Dunn, Mississippi Workmen's Compensation § 273 (2d ed. 1978) (footnote omitted). See also Southern Brick Tile v.Clark, 247 So.2d 692 (Miss. 1971). Likewise, once the burden of proof shifts to the employer, the same degree of proof is required in order to rebut the claimant's prima facie case. It is not enough to merely state that causation is possible but that there is insufficient evidence available upon which a medical conclusion could be based. That is exactly what Dr. Jones did in the case sub judice, and that simply does not rise to the required level of proof.
 V.
Substantial evidence does not support the finding that Betty did not suffer a compensable workplace injury while working at Leggett Platt. It was uncontroverted that Betty suffered respiratory "attacks" while at Leggett Platt. Betty made out a prima facie case demonstrating that exacerbation of her respiratory problems occurred at work, arose out of and in the course of her employment, and was causally connected to her disability. The employer failed to offer any affirmative testimony contradicting those elements.
Therefore, the circuit court erred in affirming the Commission's denial of workers' compensation benefits to Betty. Accordingly, the judgment of the circuit court is reversed and the case is remanded to the Mississippi Workers' Compensation Commission for further action consistent with this opinion.
REVERSED AND REMANDED TO THE MISSISSIPPI WORKERS' COMPENSATIONCOMMISSION FOR PROCEEDINGS CONSISTENT WITH THIS OPINION.
HAWKINS, C.J., PRATHER, P.J., and SULLIVAN, PITTMAN, BANKS, McRAE, JAMES L. ROBERTS, Jr. and SMITH, JJ., concur.