869 So.2d 1069 (2004)
Delores SPENCER, Appellant,
v.
TYSON FOODS, INC., Appellee.
No. 2003-WC-00805-COA.
Court of Appeals of Mississippi.
April 6, 2004.
*1071 John Griffin Jones, Aubrey Horace Brewer, Jackson, attorneys for appellant.
Michelle Barlow Mims, James Ryan Perkins, Daniel M. Baker, attorneys for appellee.
Before McMILLIN, C.J., BRIDGES and GRIFFIS, JJ.
GRIFFIS, J., for the Court.
¶ 1. Delores Spencer claimed that she was injured while working at the Tyson Foods, Inc. ("Tyson") chicken processing plant. The Mississippi Workers' Compensation Commission found that Spencer suffered a compensable injury in the course and scope of her employment and granted disability benefits. Tyson appealed to the Circuit Court of Hinds County, and the Commission's award was reversed. Finding substantial evidence to support the Commission's findings, we reverse and reinstate the order of the Commission.

FACTS
¶ 2. Delores Spencer was employed as a breast puller. Breast pullers work at the end of the deboning line where, after pulling the breast meat off the carcass, they inspect the meat for excess bones or fat.
¶ 3. On April 20, 2000, Spencer was pulling a chicken breast when she suddenly felt pain in her neck, right shoulder, arm and hand. Spencer claims that she immediately informed her supervisor, Tommie Sanders, that her hand had gone numb, and he sent her to the plant nurse. Sanders disputes this and testified that he never sent her to the nurse, but he did recall Spencer telling him that her arm was bothering her.
¶ 4. Spencer testified that she went to the nurse who wrapped her arm in a blue Ace bandage-like material from her hand to midway up her arm. The nurse could not remember treating Spencer and could not find Spencer's name in the nurse's injury log book. Both Sanders and the nurse testified that it is company policy for an employee to sign the log book before they are allowed to see the nurse. However, the regular plant nurse was on vacation that night and a temporary nurse was filling in as the nurse on duty. Spencer testified that the temporary nurse treated her, and she described the temporary nurse and recalled their conversation.
¶ 5. After she returned from the nurse's station, Spencer testified that Sanders and the plant supervisor, Sam Thomas, placed her on "light duty" work at a chicken washing station, where she was not required to use her right arm. Spencer asked Thomas if she could go to the doctor, but she claims that he told her she would lose her Good Friday holiday pay if she left. Spencer worked the remainder of her shift at the washing station.
¶ 6. At the end of her shift, Spencer went home and told her husband that she had been injured at work. Spencer tried to go to her family doctor later that morning, but his office was closed for the holiday. By noon, Spencer could not move the right side of her body, so her husband took her to the emergency room. She was treated by her family physician, Dr. L.C. Tennin. Dr. Tennin opined that Spencer's condition resulted from the cumulative effects of repetitive work motions which exacerbated an underlying condition, cervical spondylosis. Dr. Tennin then referred Spencer to Dr. Mitchell Myers, a neurologist.
¶ 7. On April 24, 2000, Spencer was transferred to St. Dominic's to see Dr. *1072 Myers. From radiological studies, Dr. Myers noted bony abnormalities known as spondylosis which compress and can compromise the spinal cord. However, Dr. Myers' ultimate diagnosis was transverse myelitis, an inflammation of the spinal cord, with cervical spondylosis. Dr. Myers testified that it was impossible to know which was the primary cause of the injury, but that there was no question work activities could exacerbate pre-existing spondylosis.
¶ 8. Dr. Myers then consulted Dr. Adam Lewis, a neurosurgeon, to operate on Spencer. In his deposition, Dr. Myers testified:
I mean, basically I said to Dr. Lewis, I said, "Adam, I think this woman has got transverse myelitis. Her spinal cord looks like it is being compressed. She's got spondylosis. We better decompress her or we are going to have a worse problem here."
¶ 9. In his operative notes, Dr. Lewis gave Spencer a pre-operative diagnosis of cervical spondylosis with traumatic spinal cord injury. Dr. Lewis operated on Spencer on April 26, 2000, and his diagnosis did not change. In his deposition, Dr. Lewis testified that, after consultation with other physicians and obtaining additional history, it was his opinion that repetitive motions from Spencer's work led to her injury. Dr. Lewis reasoned:
So it sounded to me like it was a traumatic event. Small, many traumatic events repeated over time, which led to the weakness. She didn't have any prodrome of an upper respiratory infection or previous viral infection, which you often see with transverse myelitis.
¶ 10. The medical records and testimony indicate that the treating physicians could not agree on the primary cause of Spencer's injury; however, they all admitted that Spencer had spondylosis, which may have been aggravated by the repetitive motions of her work. The diagnosis of spondylosis was even documented by an MRI. Dr. Lewis testified that his diagnosis of spondylosis remained unchanged following surgery and was further bolstered by the fact Spencer's strength significantly improved within twenty-four hours of the operation. He testified that with transverse myelitis the recovery would have been much slower.
¶ 11. Spencer testified that, before her surgery, she spoke with Scottie Ball, Tyson's head nurse, and told her that the injury was work related. Ball disputes this fact; however, Ball testified that her notes of the telephone conversation read, "Problems started when she was cutting wings. Stated after seeing nurse she washed meat for the rest of the evening." Ball explained that she was of the opinion that "just because something happens while you're doing some particular thing, that doesn't mean it is related to that job I guess is what I'm trying to say."
¶ 12. Spencer initiated the workers' compensation proceedings by filing a petition to controvert with the Commission. Spencer alleged that she suffered a compensable workplace injury. The workers' compensation administrative law judge conducted a hearing on the merits. The administrative law judge ruled that Spencer sustained a compensable injury and ordered Tyson to pay permanent total disability benefits of $207.02 per week, beginning on April 20, 2000, and continuing for 450 weeks. Tyson appealed to the Commission, and the administrative law judge's findings were affirmed. Tyson then appealed to the Hinds County Circuit Court, where the Commission's order was reversed. This appeal was deflected to this Court for consideration.

*1073 STANDARD OF REVIEW
¶ 13. An appellate court must defer to an administrative agency's findings of fact if there is even a quantum of credible evidence which supports the agency's decision. Hale v. Ruleville Health Care Center, 687 So.2d 1221, 1224 (Miss.1997). "This highly deferential standard of review essentially means that this Court and the circuit courts will not overturn a Commission decision unless said decision was arbitrary and capricious." Id. at 1225; Georgia Pacific Corp. v. Taplin, 586 So.2d 823 (Miss.1991).
¶ 14. The supreme court has held:
We do not sit as triers of fact; that is done by the Commission. When we review the facts on appeal, it is not with an eye toward determining how we would resolve the factual issues were we the triers of fact; rather, our function is to determine whether there is substantial credible evidence to support the factual determination by the Commission.
South Central Bell Telephone Co. v. Aden, 474 So.2d 584, 588 (Miss.1985). Stated differently, this Court will reverse the Commission's order only if it finds that order clearly erroneous and contrary to the overwhelming weight of evidence. Myles v. Rockwell Int'l., 445 So.2d 528, 536 (Miss.1984) (citing Masonite Corp. v. Fields, 229 Miss. 524, 91 So.2d 282 (Miss. 1956)); Riverside of Marks v. Russell, 324 So.2d 759, 762 (Miss.1975). Appellate courts may not simply reweigh the evidence and substitute its decision for that of the Commission. Indeed, this Court has a duty to defer to the Commission when its decision can be supported. Fought v. Stuart C. Irby, Co., 523 So.2d 314, 317 (Miss.1988).

ANALYSIS
¶ 15. Spencer asserts the circuit court erred in its conclusion that the Commission's decision was not supported by substantial evidence. We must consider the Commission as the ultimate fact finder. South Central Bell Telephone Co., 474 So.2d at 588. The Commission, therefore, enjoys the presumption that it made proper determinations as to the weight and credibility of the evidence and its factual findings are binding on this Court, and the circuit court as a reviewing court, provided the findings are supported by substantial evidence. Fought, 523 So.2d at 317.
¶ 16. The term "substantial evidence" is not easily defined. However, Mississippi courts have held that "substantial evidence" means something more than a "mere scintilla" of evidence, and that it does not rise to the level of "a preponderance of the evidence." Delta CMI v. Speck, 586 So.2d 768, 772-73 (Miss.1991). Thus, it may be said that substantial evidence "means such relevant evidence as reasonable minds might accept as adequate to support a conclusion." Id. We look to determine whether there was substantial evidence to support the Commission's decision.
¶ 17. To recover, a workers' compensation claimant must prove: (1) an accidental injury, (2) which arises from the course and scope of employment, and (3) there must be a causal relationship between the injury and the alleged disability. Hedge v. Leggett & Platt, Inc. 641 So.2d 9, 12-13 (Miss.1994). The employer can rebut only with evidence that rises above mere speculation or possibility. Id.
¶ 18. The first question for our consideration is whether Spencer's injury was "accidental." Under the Mississippi Workers' Compensation Act, "an injury may be accidental although it occurs in the *1074 usual course of employment and involves only the usual exertion." Vardaman S. Dunn, Mississippi Workers' Compensation § 148 (3d ed.1982 and Supp.1990). The Act's definition of injury also includes the aggravation of pre-existing conditions. Hedge, 641 So.2d at 13-14.
¶ 19. Spencer claims that she suffered pain, which led to numbness, while pulling a chicken breast at work. Spencer was employed as a "breast puller," so her injury occurred in the usual course of her employment. Tyson argues that Spencer's injury was due to transverse myelitis, which was not affected by her work. However, notwithstanding a diagnosis of transverse myelitis by Dr. Myers, the treating physicians all agreed, and objective medical evidence proved, that Spencer had spondylosis. The physicians also agreed that the repetitive pulling motions required in Spencer's line of work aggravated her spondylosis, a pre-existing condition.
¶ 20. Transverse myelitis is an infectious or inflammatory process in the spinal cord. It is usually accompanied by an upper respiratory infection or previous viral infection. Dr. Lewis testified that there were no laboratory studies which pointed to transverse myelitis.
¶ 21. Spondylosis is a condition in which bony abnormalities compress the spine. Spencer's MRI indicated the she had spondylosis, and the medical evidence established that spondylosis can be aggravated by repetitive motions such as those required by Spencer's work. Thus, there was substantial evidence before the Commission to support its conclusion that Spencer's injury met the definition of an accidental injury under the Act.
¶ 22. The second question is whether Spencer's injury resulted from the course and scope of her employment, i.e, was the injury work-related. Miss. Code. Ann. § 71-3-7 (2000). There are two separate parts to consider. In the "course of" asks whether the employee was injured while furthering the employer's business at a time and place incident to the employment. Spencer was injured by pulling a chicken breast while furthering her employer's business. In the "scope of" asks whether the employment was a substantial contributing cause of the disability.
¶ 23. The exact cause of Spencer's primary medical problem was not, and the physicians testified could not be, ascertained. However, all three doctors who treated Spencer opined that her work aggravated her spondylosis, thereby contributing to the injury. Accordingly, there was substantial evidence to support the Commission's finding that Spencer's employment was a substantial contributing cause of her disability.
¶ 24. The third question is whether there was a causal connection between the injury and the disability. As discussed above, the workplace injury need not be the primary cause of disability. Hedge, 641 So.2d at 14. Tyson relies on testimony by Dr. Myers that the diagnosis of transverse myelitis was the primary cause of Spencer's disability, arguing that her injury could not be work-related. Tyson claims that the Commission should have given more weight to Dr. Myers' opinion because he is a neurologist and as such he is more qualified to make a diagnosis. Tyson also argues that it is a well-established rule that treating specialists' opinions carry more weight than those of a general practitioner or a physician outside of the specific area of expertise. Arthur Larson, Workers' Compensation Law, § 130.05(4)(b) (2000). Tyson claims that Dr. Myers was Spencer's treating physician *1075 and that his opinion should carry more weight.
¶ 25. Spencer argues that it was within the Commission's discretion to determine the weight and credibility of the opinions of Spencer's physicians. Spencer points to the fact that Dr. Lewis was also a treating physician because he performed her surgery. Spencer claims that Dr. Lewis' opinion should be given more weight because he was a treating physician, and he actually saw her spine during the operation. Moreover, Spencer argues that, even if we were to rely on Dr. Myers' opinion as Tyson argues we should, Dr. Myers admits the aggravation to Spencer's spondylosis from the repetitive pulling motions of her job could have caused her problem.
¶ 26. The Commission's decision on the causal connection element was a factual decision. The Commission had conflicting evidence that supported the positions taken by both Spencer and Tyson. Following our standard of review, we cannot and will not reweigh the evidence. Instead, we consider whether there was substantial evidence to support the Commission's decision. Although we may have placed greater weight on Dr. Myers' opinion, we confine our review to determine whether substantial evidence existed before the Commission. Here, substantial evidence did in fact exist to support the Commission's finding.
¶ 27. Spencer presented substantial evidence to prove that she had a compensable injury. Once proven, the employer can rebut only with evidence that arises above mere speculation or possibility. Hedge, 641 So.2d at 12-13. Hedge interprets evidence that rises "above mere speculation or possibility" to mean that the employer must demonstrate another, non-work-related cause of the injury to sustain its burden of rebuttal. Id. at 14-15.
¶ 28. Tyson claims that transverse myelitis, which is non-work-related, not spondylosis, was the cause of Spencer's injuries. Thus, Tyson contends that the circuit court did not err in reversing the Commission. However, in Kersh v. Greenville Sheet Metal Works, 192 So.2d 266, 269 (Miss.1966), the Mississippi Supreme Court held that where medical testimony is concerned, whenever the expert evidence is conflicting, the Court will affirm the Commission whether the award is for or against the claimant. Thus, the circuit court erred when it reweighed the evidence rather than looking to see if there was substantial evidence to support the Commission's decision.
¶ 29. Tyson's final argument is that the Commission's order could not have been based on substantial evidence because of the testimony of Spencer's supervisor and the on-call nurse, which contradicted Spencer's testimony of the events that occurred at work. Tyson argues that in White v. Superior Products, Inc., 515 So.2d 924, 927 (Miss.1987), the supreme court concluded that:
On the one hand, the undisputed testimony of a claimant which is not so unreasonable as to be unbelievable, given the factual setting of the claim, generally ought to be accepted as true. On the other hand, the Commission is the judge of the credibility of the witnesses. Where, in such circumstances, the Commission, with reason, finds a claimant's testimony untrustworthy or incredible, the Commission has the authority to reject it.
The Commission did judge the credibility of Spencer's testimony and did not reject it, but rather used it as a basis for granting her workers' compensation benefits.
¶ 30. Accordingly, we find that there was substantial evidence to support the Commission's decision. We reverse and *1076 render the judgment of the circuit court and reinstate the Commission's order granting benefits to Spencer.
¶ 31. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY IS REVERSED AND RENDERED AND THE ORDER OF THE FULL COMMISSION IS REINSTATED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, IRVING, MYERS AND CHANDLER, JJ., CONCUR.