CARLTON, J.,
for the Court:
¶ 1. Tommie L. Ewing worked for Bryan Foods Inc. for approximately twenty years. Following an injury to his back and leg, Ewing left his position in 2000. After filing an initial petition to controvert in 2000 and a second petition to controvert in 2001, the administrative judge (AJ) dismissed Ewing’s claims for failure to prove by a preponderance of the evidence that his injuries were work-related. The AJ’s *282 order was later overturned by the Workers’ Compensation Commission (Commission), which ruled in favor of Ewing and required Bryan Foods to pay compensation benefits. Aggrieved, Bryan Foods appeals. Ewing cross-appeals. Finding no error, we affirm the order of the Commission.
FACTS
¶2. Ewing began working for Bryan Foods in West Point, Mississippi, in 1979 after withdrawing from high school in his eleventh-grade year. Over the course of his employment with Bryan Foods, Ewing held various positions until his permanent failure to report to work in 2000.
¶ 3. In 1984, Ewing began working as an “edible-products handler,” which required him to wear specialized clothing, including lace-free, slip-on rubber boots with steel toes. His job was to operate a piece of equipment called a “work saver.” The work saver was a battery-powered forklift that Ewing rode through the warehouse and used to move heavy items up to 2,000 pounds. Ewing occasionally had to manually move boxes weighing approximately sixty pounds from a conveyor line to a pallet. Ewing maintained his employment as an edible-products handler until the incidents at issue.
¶ 4. In a demand letter to Bryan Foods dated June 22, 1999, Ewing sought workers’ compensation benefits due to back and leg injuries allegedly sustained from lifting heavy objects at work. However, in his first petition to controvert filed in 2000, Ewing claimed to have tripped on his shoelaces at work on May 12,1998, and to have only injured his back. In his second petition to controvert filed in 2001, Ewing claimed to have sustained an injury to his left-lower knee in the fall, as well. Prior medical records also indicate Ewing told a treating physician that he had injured his back when his forklift ran into a drain hole at work.
¶ 5. We note that whether or not Ewing reported the incident to his supervisors, as required by Bryan Foods’ policy, remains in dispute. Bryan Foods claims to have had no formal reports of any injury to Ewing prior to the receipt of Ewing’s demand letter in 1999. However, while not within the formal purview of injury reports, the records of Bryan Foods’ emergency medical technician (EMT), Letitia Owens, show that Ewing saw Owens on May 12, 1998, claiming to have back pain after tripping on his shoelaces at work.
¶ 6. On October 6, 1997, approximately seven months before the date of the May 1998 injury, Ewing saw Dr. Robert T. Lott, his regular family doctor, complaining of lower-back pain from an injury at work. Although Dr. Lott’s records note that Ewing attributed the pain to an injury at work, no details were provided as to how the injury occurred. On June 23, 1998, Ewing returned to Dr. Lott with similar complaints. Dr. Lott then referred Ewing to Dr. Walter Eckman in Tupelo, Mississippi, for neurosurgical evaluation and treatment.
¶ 7. Dr. Eckman first saw Ewing on October 1, 1998. Ewing complained of lower-back pain but did not mention any injury to his left knee. According to Dr. Eckman’s records, Ewing claimed he had injured his back when his forklift ran into a drain hole, and he failed to mention the alleged fall at work in 1998. After an evaluation, Dr. Eckman diagnosed Ewing with having a Grade I spondylolisthesis at L5-S1 and performed a fusion on March 16,1999.
¶ 8. On May 3, 1999, Dr. Eckman released Ewing to light-duty work. On May 22, 2000, Dr. Eckman released Ewing to full and unrestricted duty. Shortly before *283 his release to full duty, in March and April 2000, Ewing was involved in two motor-vehicle accidents. He admits to sustaining an injury to his back in the March 2000 accident.
¶ 9. Upon his return to work in May 2000, Bryan Foods placed Ewing on the “tumbler job,” which required him to press buttons on a control box to operate a mechanical meat tenderizer. However, Ewing advised his supervisor that he lacked the ability to complete the job because it required him to stand for too long. Bryan Foods then attempted to train Ewing on the “JBA System” of electronic inventorying. A short time into his training, Ewing advised his supervisor that he was going to a medical facility, and he did not return to work until approximately one month later. His supervisor again attempted to train him on the JBA System, but Ewing failed to return from lunch on the first day of his training, and has not returned to work since that time.
¶ 10. After the filing of Ewing’s second petition to controvert in 2001, the case was set for trial. The trial court granted nine continuances between March 14, 2001, and February 28, 2005. On December 13, 2005, the day before the trial, Ewing produced a 2001 Social Security Administration order awarding him Social Security disability benefits. Bryan Foods objected to the introduction of the order on the basis that it had requested this information early in the discovery process, but had never been provided the information. Bryan Foods claimed the order contains references to examining physicians not identified by Ewing during the course of discovery. The order also references mental disabilities not previously claimed by Ewing. Bryan Foods also noted that the order was dated 2001 — four years prior to the date it was produced to Bryan Foods. Bryan Foods now also asserts that the order and the medical opinions therein are inadmissible as untimely, hearsay, and because they were not in medical-affidavit form as required by the Workers’ Compensation Rules of the Commission.
¶ 11. The AJ assigned to the case ruled in favor of Bryan Foods on April 28, 2006, in finding that Ewing failed to establish by a preponderance of the evidence that his injuries were related to his employment. She also ruled that even if Ewing’s left-knee injury was work-related, any claim based on that injury was barred by the statute of limitations. As such, she found that Bryan Foods was not liable to pay workers’ compensation benefits to Ewing.
¶ 12. The Commission later reversed and remanded the AJ’s findings on February 28, 2007, and found that Ewing had met his burden of proving the injuries were work-related. The Commission determined that Ewing’s inconsistencies regarding the cause of his back and knee injuries were due to his “limited intellectual capacity” and “borderline mental retardation].” The Commission relied, in part, on the 2001 order that Bryan Foods contests. On remand, the AJ found that Ewing reached maximum medical improvement (MMI) on May 22, 2000, but had failed to meet his burden of proving a disability under the Workers’ Compensation Act. She also denied Ewing’s request for another back surgery, and again found his claim for benefits for a left-knee injury to be barred by the statute of limitations.
¶ 13. On September 28, 2010, the Commission affirmed the AJ’s finding that Ewing reached MMI on May 22, 2000. Likewise, the Commission upheld the denial of a repeat back surgery. However, the Commission found Ewing’s left-knee-injury claim was not barred by the statute of limitations. The Commission further found that Ewing had sustained a five percent loss of industrial use of the left leg *284 for wage-earning purposes, but had reached MMI, and that he had incurred a fifty percent loss of wage-earning capacity as a result of his lower-back injury.
¶ 14. Ewing then filed a motion for reconsideration asking the Commission to award him penalties and interest and order future medical treatments. In July 2011, the Commission amended its September 28, 2010 order to include a requirement for Bryan Foods to pay a ten percent penalty and interest on any due and unpaid compensation to Ewing, and to pay for Ewing’s reasonable and necessary medical treatment. Bryan Foods appealed the 2010 order, which the Commission denied.
¶ 15. Bryan Foods now appeals, claiming numerous reversible errors. For the purposes of clarity, we have categorized Bryan Foods’ claims of error as the following arguments: (1) Ewing failed to establish by a preponderance of the evidence that he sustained compensable injuries, and the Commission erred in determining that Ewing met his burden of proof; and (2) the Commission erred in its findings that Ewing’s left-knee-injury claim is not barred by the two-year statute of limitations.
¶ 16. Ewing cross-appeals, claiming the Commission erred in its determination that he had reached MMI. Alternatively, Ewing asserts that even if the Commission properly held that he has reached MMI, the Commission erred in failing to find that he has sustained permanent and total disability and loss of wage-earning capacity.
STANDARD OF REVIEW
¶ 17. “The ... Commission sits as the ‘ultimate finder of facts’ in deciding compensation cases, and therefore, ‘its findings are subject to normal, deferential standards upon review.’ ” Pilate v. Int'l Plastics Corp., 727 So.2d 771, 774 (¶12) (Miss.Ct.App.1999) (quoting Natchez Equip. Co. v. Gibbs, 628 So.2d 270, 278 (Miss.1993)). This Court will only reverse the findings of the Commission if the findings are “clearly erroneous.” J.R. Logging v. Halford, 765 So.2d 580, 583 (¶ 13) (Miss.Ct.App.2000) (citing Evans v. Cont’l Grain Co., 372 So.2d 265, 269 (Miss. 1979)). A finding is clearly erroneous if, “although there is some slight evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made by the Commission in its findings of fact and in its application of the [Workers’ Compensation] Act.” Id. However, “this Court reviews matters of law de novo, while according the interpretation of the Commission great weight and deference.” Natchez Equip. Co., 623 So.2d at 273 (citation omitted).
¶ 18. In order to prevail on a claim for workers’ compensation benefits, the claimant must prove by a preponderance of the evidence that he suffered “an accidental injury arising out of and in the course of his employment^] and a causal connection between the injury and the claimed disability.” S. Miss. Elec. Power Ass’n v. Graham, 587 So.2d 291, 294 (Miss. 1991) (quoting Narkeeta, Inc. v. McCoy, 247 Miss. 65, 70,153 So.2d 798, 800 (1963)). Furthermore, the claimant must “establish every essential element of the claim[,] and it is not sufficient to leave the matter to surmise, conjecture[,] or speculation.” Id.
DISCUSSION
¶ 19. On appeal, Bryan Foods asserts that Ewing failed to establish by a preponderance of the evidence that he sustained compensable injuries, and the Commission erred in determining that Ewing met his burden of proof. Bryan Foods also submits that the Commission erred in its findings that Ewing’s left-knee-injury claim is *285 not barred by the two-year statute of limitations.
¶ 20. In his cross-appeal, Ewing asserts that he has suffered back and knee disabilities due to injuries he sustained during his employment with Bryan Foods. He also claims that the Commission should have found that he was totally disabled as a result of his work-related back and leg injuries. Ewing also cites as error the Commission’s finding that he has reached MMI with respect to his leg and back injuries. Ewing states that the Commission’s September 2010 finding that he had reached MMI was based on the same evidence presented in February 2007 when it found that Ewing had not yet reached MMI. As stated, in order to prevail on his claim for workers’ compensation benefits, Ewing must prove by a preponderance of the evidence that he suffered “an accidental injury arising out of and in the course of his employment^] and a causal connection between the injury and the claimed disability.” Id.
¶ 21. We first turn to examine Bryan Foods’ claim that Ewing failed to meet his burden of proving that he suffered an injury arising out of and in the course of his employment and showing a causal connection between the injury and the claimed disability. The record reflects that the AJ initially assigned to the matter found that Ewing failed to establish by the preponderance of the evidence that he had suffered compensable injuries related to his employment. The AJ’s April 28, 2006 ruling was based, in large part, on her finding that Ewing failed to connect his injuries to specific incidents at the workplace. On appeal, the Commission overturned the AJ’s decision in its February 28, 2007 order after finding that Ewing in fact sustained compensable injuries to his knee and back as a result of a work-related injury, specifically when he tripped and fell on May 16,1998.
1122. In its February 2007 order, the Commission provided the following in support of its finding that Ewing had suffered work-related injuries to his back and knee:
[T]he testimony of [Ewing] as to the occurrence of his injury and the resulting disability ... [is] generally credible. His description of the accident itself, along with the immediate pain and discomfort he felt following this accident, is not seriously contradicted in our view. We do not believe there is really any question that, on or about May 16, 1998, [Ewing] fell and injured himself. He tripped while descending a flight of stairs.
[[Image here]]
Dr. Eckman’s ... testimony generally supports [Ewing’s] contention that his current disability is related to his injury at work.
[[Image here]]
Ewing also testified credibly that he injured his knee in the fall, and Dr. Russell Linton eventually diagnosed a left meniscus tear. This was treated surgically by Dr. Linton, and his testimony also supports Ewing’s claim that his knee injury and resulting impairment is related to his fall at work.
¶ 23. In Moore v. Independent Life & Accident Ins. Co., 788 So.2d 106, 112 (¶ 22) (Miss.Ct.App.2001), this Court stated that “[e]ven though the testimony may be somewhat ambiguous as to causal connection, all that is necessary is that the medical findings support a causal connection.” The Commission also stated that it based its decision to overturn the AJ’s order in part on the Social Security Administration order indicating Ewing was mentally disabled. The Commission determined that this particular order, describing Ewing as borderline mentally disabled and being of *286 limited intellectual capacity, explained and resolved Ewing’s inconsistencies regarding where and how his injury occurred.
¶ 24. With respect to Ewing’s assignments of error regarding his disability benefits, the Commission’s September 2010 order states that Ewing sustained a five percent industrial loss of use of his left leg for wage-earning purposes, and a fifty percent loss of wage-earning capacity as a result of the injury to his lower back. See Spencer v. Tyson Foods, Inc., 869 So.2d 1069, 1073 (¶¶ 15-16) (Miss.Ct.App.2004) (citations omitted). The Commission ordered these awards to be paid by Bryan Foods consecutively, beginning July 4, 2002.
¶ 25. In reaching its determination to award partial, rather than permanent, disability benefits, the Commission acknowledged the following facts: Ewing never graduated high school; he was placed in special-education classes in elementary school; he was functionally illiterate; and according to an order of the Social Security Administration, he was also deemed mentally retarded. The Commission acknowledged Ewing worked for Bryan Foods for approximately twenty years and had never worked anywhere else or received any training for specialized skills. The order of the Commission reflects that it acknowledged Ewing’s “questionable efforts” to seek other employment. The Commission further stated that although Dr. Eckman released Ewing to work without any restrictions, Ewing attempted to return to work in different positions, but without success. The Commission noted that the jobs available to Ewing at Bryan Foods consisted of repetitive manual labor, requiring lifting, pushing, and pulling items weighing sixty pounds or more. The Commission also found that Ewing continued to have pain and physical limitations as a result of his back and leg injuries. The Commission also stated that “it is probative, but by no means binding,” that Ewing has been declared permanently and totally disabled for Social Security purposes. Contrary to the assertions of Bryan Foods, the order of the Commission reflects that it did not base its decision solely on the contested order of the Social Security Administration.
¶ 26. Regarding MMI, the Commission cited the testimony of Dr. Ashraf Ragab, who evaluated Ewing and opined that Ewing needed surgery to relieve his back pain. The Commission found that Dr. Ra-gab’s ultimate recommendation for more surgery was “completely at odds” with the majority of his testimony. As a result, the Commission held that Dr. Ragab’s testimony was not credible. The Commission based its finding that Ewing reached MMI as to his back injury on the opinions of Dr. Eckman and Dr. Rodney Olinger, who both opined that Ewing’s fusion surgery in his lower back was successful. The Commission also considered other medical evidence in the record in making this determination, and provided that its decision was based upon the evidence as a whole. With respect to his knee injury, the Commission noted that Dr. Linton performed surgery on Ewing to repair a meniscus tear, and on July 3, 2002, he placed Ewing at MMI, with a function impairment of two percent to his left leg. Accordingly, the Commission found that Ewing reached MMI from his knee injury on July 3, 2002.
¶ 27. The Commission found that Ewing sustained a work-related injury, had reached MMI, and was entitled to receive partial disability benefits, based on the evidence as a whole. We find that the evidence in the record before us substantially supports the Commission’s decision that Ewing established a causal link between his employment and his injuries. Accordingly, we find that the Commis *287 sion’s findings and decision were not against the overwhelming weight of the evidence. See Smith v. Johnston Tombigbee Furniture Mfg. Co., 43 So.3d 1159, 1164 (¶ 15) (Miss.Ct.App.2010). The Commission acts as the ultimate fact-finder, and it “enjoys the presumption that it made proper determinations as to the weight and credibility of the evidence.... [I]ts factual findings are binding on this Court ... provided the findings are supported by substantial evidence.” Spencer, 869 So.2d at 1073 (¶ 15) (citations omitted). Therefore, we affirm the Commission’s order awarding compensation benefits.
¶ 28. THE JUDGMENT OF THE MISSISSIPPI WORKERS’ COMPENSATION COMMISSION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT/CROSS-APPELLEE.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., ROBERTS, MAXWELL, FAIR AND JAMES, JJ., CONCUR. ISHEE, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY BARNES, J.