# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-WC-01403-COA

**DONNA WEST**                                                                              **APPELLANT**

**v.**

**THE NICHOLS CENTER AND MISSISSIPPI**                              **APPELLEES**
**HEALTH CARE ASSOCIATION**

| | |
|---|---|
| DATE OF JUDGMENT: | 12/01/2021 |
| TRIBUNAL FROM WHICH APPEALED: | MISSISSIPPI WORKERS' COMPENSATION COMMISSION |
| ATTORNEY FOR APPELLANT: | MARSHALL JACKSON GOFF |
| ATTORNEYS FOR APPELLEES: | BETTY B. ARINDER |
| | LANA E. GILLON |
| NATURE OF THE CASE: | CIVIL - WORKERS' COMPENSATION |
| DISPOSITION: | AFFIRMED - 08/08/2023 |
| MOTION FOR REHEARING FILED: | |

**BEFORE WILSON, P.J., WESTBROOKS AND EMFINGER, JJ.**

**WILSON, P.J., FOR THE COURT**:

¶1.     Donna West tested positive for COVID-19 in June 2020. At the time, she worked as a nurse at the Nichols Center, a short- and long-term care facility in Madison. West later filed a petition to controvert with the Workers' Compensation Commission, alleging that she contracted COVID-19 at work and "developed a blood clot in her leg" as a result of COVID-19. The Nichols Center denied that West had sustained any compensable injury.

¶2.     Following a hearing, an administrative judge (AJ) denied West's claim, finding that West presented no lay or medical evidence that she contracted COVID-19 at work. The AJ also found that it was clear West was never diagnosed with a blood clot and that there was no medical evidence linking any pain in her leg to COVID-19 or her work. The full

Commission affirmed the AJ's decision.

¶3.     On appeal, West argues that the Commission erred by finding that she failed to meet her burden of proof. However, we find no error and affirm.

**FACTS**

¶4.     In June 2020, West was employed as a nurse at the Nichols Center. She was sixty-three years old at the time. She last worked at the Nichols Center on Sunday, June 14, 2020. A day or two later, West woke up with a fever. She called her supervisor and was told to come in for a COVID-19 test. On June 19, the test results came back positive for COVID-19, and West was told to quarantine at home for two weeks.

¶5.     On June 18, while awaiting her test results, West had a telemedicine appointment with an MEA medical clinic. West thought she had a urinary tract infection (UTI), and the doctor diagnosed her with a UTI and prescribed an antibiotic.

¶6.     After her two-week quarantine period ended, West told the Nichols Center that she was still sick and could not return to work. On July 8, West went to MEA for treatment. She reported that she was still experiencing symptoms related to COVID-19, including a cough. A nurse practitioner prescribed a Z-Pak and cough medicine.

¶7.     On July 24, West visited MEA again, still reporting symptoms related to COVID-19, including a persistent cough, nausea and vomiting, shortness of breath, and extreme fatigue. She also complained of pain in her left thigh. A nurse practitioner noted left leg swelling and diagnosed West with an upper respiratory tract infection of an unspecified type.

2

¶8.    MEA also referred West to St. Dominic's Hospital for a Doppler ultrasound of her left leg, which was performed the same day. The ultrasound did not reveal any blood clotting or any other cause for concern.

¶9.    West returned to MEA on August 12. She reported that she had been experiencing leg pain for three months and that it was getting worse. The doctor recommended physical therapy and prescribed medicine for the pain. West also reported that she was still dealing with extreme fatigue from COVID-19, although she no longer reported a cough or shortness of breath. Based on West's report of fatigue, the doctor wrote a note limiting her to working four eight-hour shifts per week until her next visit.

¶10.    On November 17, the MEA doctor signed a letter clearing West to return to work, apparently without any limitations.

## PROCEDURAL HISTORY

¶11.    On August 20, 2020, West filed a petition to controvert. She alleged that she "developed a blood clot in her leg" and "other pulmonary injuries" as a result of COVID-19, which she alleged she contracted while "[t]aking care of COVID positive patients" at the Nichols Center. West sought temporary total disability benefits, permanent partial disability benefits, and medical treatment. The Nichols Center, along with its insurance carrier, answered and denied that West had sustained any compensable injury.

¶12.    On July 12, 2021, a hearing was held before an AJ. The parties agreed that the only issues to be addressed at the hearing were (1) whether West's COVID-19 diagnosis was

3

causally related to her work at the Nichols Center; and (2) whether West was diagnosed with a blood clot, and, if so, whether the blood clot was causally related to her employment.

¶13.    At the hearing, West testified that in March or April 2020, the Nichols Center established a "COVID wing" for short-term patients who had tested positive. West covered the COVID wing. West believed that she was the ninth person who had tested positive at the Nichols Center since the beginning of the pandemic in March 2020, including five other employees and three residents. However, West could not identify any person she had been in contact with during the last two weeks she worked at the Nichols Center who tested positive for COVID-19. West testified that she and the other employees at the Nichols Center all took significant precautions to prevent the spread of the virus, including wearing N95 masks, face shields, gowns, goggles, and gloves and sanitizing equipment and surfaces. West testified that she primarily stayed home other than going to work, although she did go to Wal-Mart and to get gas for her car. West lived with one other person, Thomas Hines, but she testified that Hines never got sick.

¶14.    Following the hearing, the AJ entered an order finding that West failed to prove by a preponderance of the evidence that she sustained a work-related injury. In particular, the AJ found that West produced no evidence, lay or medical, that she contracted COVID-19 at work. The AJ also found that West "was clearly never diagnosed with a blood clot in her leg as alleged in the Petition to Controvert, and there is no medical evidence to support that her left leg pain is causally related to her COVID-19 diagnosis or her employment."

4

¶15. West filed a petition for review by the full Commission. The Commission affirmed the AJ's finding that West failed to meet her burden of proof. The Commission noted that except in "simple and routine cases," expert testimony is necessary to establish medical causation, and West presented no "medical opinion" or "medical evidence" linking her COVID-19 diagnosis to her employment.

¶16. West filed a notice of appeal. On appeal, she argues that the Commission erred by finding that she failed to meet her burden of proof.

**ANALYSIS**

¶17. In workers' compensation cases, "this Court will only reverse if the Commission's decision lacks the support of substantial evidence, is arbitrary or capricious, is beyond the Commission's scope or its power, or violates constitutional or statutory rights." *Sheffield v. S.J. Louis Constr. Inc.*, 285 So. 3d 614, 618 (¶8) (Miss. 2019). In determining whether substantial evidence supports the Commission's decision, "this Court serves only as a reviewing court and will not . . . re-weigh the evidence." *Id.* "'Substantial evidence' means more than a mere scintilla of evidence but does not rise to the level of a preponderance of the evidence." *Id.* We cannot reverse a finding by the Commission if the evidence provides "a substantial basis of fact from which the fact in issue can be reasonably inferred." *Id.* Our deferential "standard of review means that this Court cannot set aside a . . . decision that is supported by substantial credible evidence, even if conflicting evidence exists and even if this Court may have found the facts otherwise if it were the trier of facts." *Id.* "As a result,

5

this Court will reverse the Commission's order only if it finds that order clearly erroneous and contrary to the overwhelming weight of the evidence." *Jones v. Miss. Baptist Health Sys. Inc.*, 294 So. 3d 76, 80-81 (¶21) (Miss. 2020) (quotation marks omitted).

¶18.　A workers' compensation claimant has the burden of proving by a preponderance of the evidence "(1) an accidental injury, (2) arising out of and in the course of employment, and (3) a causal connection between the injury and the . . . claimed disability." *Hedge v. Leggett & Platt Inc.*, 641 So. 2d 9, 13 (Miss. 1994) (quoting *Hardin's Bakeries v. Dependent of Harrell*, 566 So. 2d 1261, 1264 (Miss. 1990)). Thus, to establish one essential element of her claim, West was required to prove, by a preponderance of the evidence, that she contracted COVID-19 in the course of her employment at the Nichols Center.

¶19.　A fair review of the record shows that West offered no proof, lay or medical, that she contracted COVID-19 at the Nichols Center. West relied solely on her own testimony and medical records. As noted above, she testified that she and other employees took significant precautions to prevent the spread of the virus. Moreover, at the hearing before the AJ, West admitted that she could not identify a single employee or patient she had been in contact with during her last two weeks of work who tested positive for COVID-19. West claimed that a total of eight other employees or patients tested positive before her. However, West could not say that she was exposed to any of those persons during the two weeks prior to her diagnosis. Indeed, West believed that the other nurses and the three residents who contracted COVID-19 all tested positive and began quarantining in May 2020. At the hearing, West

admitted that she did not know where she was exposed to COVID-19 and that she simply assumed she was exposed at the Nichols Center. West stated in part, "Well, I know I got it from Nichols Center. Period. I don't know. I mean, you know, it was bad in the Nichols Center. I mean, everybody knew that COVID was just crazy in the Nichols Center. It was everywhere. So it could have been anywhere. I don't know."

¶20. In addition, West's medical records do not support her claim. West's medical records simply show that she reported her prior positive test and symptoms to the MEA clinic. Her records do nothing to establish where she contracted the virus. Moreover, as the AJ and Commission found, West's medical records *clearly refute* her allegation that she developed a blood clot as a result of COVID-19. As noted above, there is simply no evidence that West ever had a blood clot.

¶21. A workers' compensation claimant bears "the general burden of proof to establish every essential element of her claim, *and it is not sufficient to leave the matter to surmise, conjecture or speculation.*" *Narkeeta Inc. v. McCoy*, 247 Miss. 65, 69, 153 So. 2d 798, 800 (1963) (emphasis added); *accord, e.g.*, *S. Miss. Elec. Power Ass'n v. Graham*, 587 So. 2d 291, 294 (Miss. 1991); *Toldson v. Anderson-Tully Co.*, 724 So. 2d 399, 402 (¶11) (Miss. Ct. App. 1998). West failed to meet this burden because she offered no evidence to show where she contracted COVID-19. It is possible she contracted COVID-19 at work, even though great precautions were taken to prevent the virus's spread there, and even though she could identify no COVID-19-positive patient or coworker with whom she came in contact during

7

the relevant time period. But it is also possible that she contracted the virus at Wal-Mart or somewhere else or from Hines.[1] In short, the evidence left "the matter to surmise, conjecture or speculation." *Narkeeta Inc.*, 247 Miss. at 69, 153 So. 2d at 800. Therefore, we certainly cannot say that the Commission's finding—that West failed to meet her burden—is "clearly erroneous and contrary to the overwhelming weight of the evidence." *Jones*, 294 So. 3d at 80-81 (¶21). Rather, because substantial evidence supports the Commission's decision, this Court must affirm. *Id.*[2]

¶22. **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR.**

---

[1] Although West testified that Hines did not get sick, some individuals who have COVID-19 remain asymptomatic.

[2] Although we affirm the Commission's decision and finding that West did not meet her burden of proof in this case, we do not necessarily agree with the Commission's opinion to the extent it indicated that expert "medical opinion" evidence would be necessary for a claimant to prove by a preponderance of the evidence that she contracted COVID-19 at work. For one thing, we are uncertain whether a doctor *could* opine regarding where a claimant contracted COVID-19 or whether it would be practical to expect such evidence in a workers' compensation case. However, we do not reach the issue in this case because West failed to present *any* evidence, lay or medical, tending to show that she contracted COVID-19 at work. In addition, we requested and received supplemental briefs regarding whether COVID-19 should be regarded as an "accidental injury," Miss. Code Ann. § 71-3-3(b) (Rev. 2021), an "occupational disease," Miss. Code Ann. § 71-3-7(1) (Rev. 2021), or an "ordinary disease of life," *see* 4 Arthur Larson et al., *Larson's Workers' Compensation Law* § 51.06[2] (Rev. ed. 2022), for purposes of the workers' compensation laws. However, regardless of how the virus is characterized, West's claim fails for lack of proof. Accordingly, we do not address this issue either.