515 So.2d 924 (1987)
James WHITE, Jr.
v.
SUPERIOR PRODUCTS, INC., and Lumbermen's Underwriting Alliance.
No. 56663.
Supreme Court of Mississippi.
November 12, 1987.
Billy W. Shelton, Francis J. Larkin, Tupelo, for appellant.
Dan McCullen, Butler, Snow, O'Mara, Stevens & Cannada, Jackson, for appellees.
Before ROY NOBLE LEE, C.J., and ROBERTSON and GRIFFIN, JJ.
ROBERTSON, Justice, for the Court:

I.
In one sense today's is an unexciting workers compensation case wherein the *925 party disappointed below challenges findings of fact made by the Commission. At issue, however, is whether our deference to Commission fact findings is as great when those favor employer and carrier as when they favor the claimant.
Today's case concerns an unwitnessed accident. Only the claimant testified what happened. The Workers' Compensation Commission rejected his claim because it found his testimony not worthy of belief. Because limitations upon our scope of review have been established with indifference to the party in whose favor such issues have been decided, we affirm.

II.

A.
James White, Jr., then 29 years of age, was and is a resident of Tupelo, Mississippi. White was employed by Superior Products, Inc., a mattress building firm, whose principal office is in Plantersville, Mississippi. On April 13, 1983, White claims that he sustained an injury on the job.
White's testimony is summarized as follows: Between 5:30 and 6:00 p.m. on the day in question, White says he was carrying about fifty pounds of mattress pads on his head when he slipped and fell to his knees. He says he continued working until about 6:00 and then had a co-worker, James Ivy, take him home whereupon he went to the emergency room at the North Mississippi Medical Center for treatment. On his way home that evening, White says he saw his supervisor, Eugene Heatherly, at the store. He told Heatherly that he had hurt his back, and Heatherly supposedly told White to bring in a doctor's excuse. White did not return to work for a week. He says he then returned for a week and three days, but his back got worse and he could no longer work. White had back surgery in July of 1983.
Ike Russell, the general manager of Superior Products, testified that at no time while White was working at the company, did he, Russell, receive notice that White had injured himself. The time cards for that week showed that on April 13, the date of the alleged injury, White worked until 6:40 p.m. After the 13th, White began work again on April 20 and worked for thirteen days. During this period after the 13th, White was working ten to eleven hour days and running about twenty percent over production; "You have to work hard to do that." No one denies that this level of production was unusual for White. All employees are given a handbook in which it is explained the procedure for reporting job-related injuries. Yet Russell was not notified until the week of May 13 that White had been injured on the job. It was at this time that White was fired for absenteeism.
White stated that a fellow employee, Jesse Carouthers, was an eyewitness. Carouthers, however, denied this. Carouthers stated he was working in the bedding department about thirty feet from White. He did not see White fall himself on April 13 and was not aware that White had claimed to be injured until the next week when White came back to work and told Carouthers that he had slipped a disc and was "walking kind of funny."
Lonzo McPherson worked in the pinning department at Superior Products, the same department White was working in at the time in question. McPherson did not see White fall either. When White came back to work, he said his back was troubling him.
James Ivy, who had worked in the same department as White at Superior Products, testified that he drove White home in White's car the day of the alleged injury because White said his back was hurting from a fall that morning. Ivy, however, never saw the fall. White and Ivy both got off at 6:00 p.m. and Ivy drove White home to Tupelo. On the way, they stopped at the store and White went inside and told the foreman (Heatherly) that he had hurt his back. The next day Ivy reminded the foreman that White had told him the day before that he had hurt his back and the foreman said "Yeah, I remember." Ivy had gotten White home the night of April 13 about 7:00 or 7:30 p.m.
*926 Ike Russell testified that he and the attorney for the company had interviewed Ivy in preparation for the hearing and that Ivy had said then that he didn't know anything  that he had driven White only a couple of blocks before realizing he couldn't operate the car so White had driven himself home. Ivy has since been fired.
James Hauss, plant manager of the Walled Lake Door Company where White had worked for almost six weeks in early 1982, testified that White had been fired for falsifying a Workers Compensation claim. White had alleged a "strained side" but the hospital report came back with a diagnosis of gonorrhea. White did not report Walled Lake as a former employer on his application at Superior Products.
Superior Products foreman Eugene Heatherly testified that he was never notified of an injury suffered by White while White was working. He would have investigated if he had known of it. Heatherly remembers personally handing a copy of the rules and regulations book regarding group insurance and Workers Compensation to White.
Robert Matthews, vice president of Superior Products, stated that he was never notified of the injury either. Normal procedure called for immediate notification of work-related injuries whereupon the company would take the injured employee to the hospital.
Dr. Houston Franks, a Board eligible orthopedic surgeon from Tupelo, Mississippi, testified that he first saw White on May 16, 1983; White was complaining of back pain from an injury suffered while lifting a pad on April 13, 1983. Surgery was performed on July 10 during which a "fairly large lateral bulge ... under the fifth sacral nerve root" was removed. When Franks saw the patient for the last time on October 20, 1983, he still had a little leg pain but "I think he has reached the point where I've done about all for him I can. Still, he probably has about a fifteen percent impairment to the body as a whole."

B.
On May 11, 1983, White filed his motion to controvert with the Mississippi Workers' Compensation Commission. On June 29, 1984, the Administrative Judge entered an order denying White's claim for benefits. The Administrative Judge relied upon numerous discrepancies in the testimony, including:
(1) White testified that he had clocked out at work at 6:00 and gotten home at 6:30 where he stayed for ten minutes until his girlfriend drove him to the emergency room. The emergency room records show that White arrived at the emergency room at 10:35 p.m. On cross-examination, White stated he was lying across his bed from 7:00 to 10:30. The emergency room report also states that the injury occurred at 3:30 p.m., not at 5:30 as White testified.
(2) White had been to the emergency room many more times than he answered in the interrogatories. The records show three visits to the emergency room for headaches, one for chest pain, and one for conjunctivitis (pinkeye). These visits occurred in December of 1982 and January of 1983.
(3) At the hospital, White indicated on the admission forms that his treatment would be covered by Superior's group insurance plan, not workers' compensation.
(4) In White's application for employment at Superior Products he listed a ninth grade education and omitted his employment at Walled Lake where he was fired for filing a false Workmen's Compensation claim. White testified that he had only a fourth grade education.
On April 25, 1985, the Mississippi Workers' Compensation Commission entered its order affirming the decision and findings of the Administrative Judge, one Commissioner dissenting. The matter was then appealed to the Circuit Court of Lee County, Mississippi, which on July 11, 1985, entered its order affirming the Commission's decision. The instant appeal has followed.

III.
White asks that we reverse the Commission's finding that White failed to show that he "suffered an accidental injury arising *927 out of and in the course of his employment on April 13, 1983." As indicated above, such an appeal necessarily brings claimant face to face with the restricted scope of review authority we have in such matters.
The judicial review function  first of the Circuit Court and thereafter of this Court  is to determine whether there is substantial credible evidence which would support the factual determination made by the Commission. If there should be such substantial credible evidence, we are without authority to disturb that which the Commission has found, even though, upon that evidence, we might find otherwise were we the fact finders. See General Electric Co. v. McKinnon, 507 So.2d 363, 365-66 (Miss. 1987); Reichhold Chemical, Inc. v. Sprankle, 503 So.2d 799, 800-02 (Miss. 1987); Marshall Durbin, Inc. v. Hall, 490 So.2d 877, 879-80 (Miss. 1986); Olen Burrage Trucking Co. v. Chandler, 475 So.2d 437, 439 (Miss. 1985).
Today's question of enforcement of those limitations upon that scope of review arises in a particular context. The Commission  and, prior to the Commission, the Administrative Judge  found against claimant because it did not believe his testimony. Where a claimant is the only eyewitness who supports the claim of accidental injury, the Commission must proceed with sensitivity. On the one hand, the undisputed testimony of a claimant which is not so unreasonable as to be unbelievable, given the factual setting of the claim, generally ought to be accepted as true. See Myles v. Rockwell International, 445 So.2d 528, 536 (Miss. 1983); Edwards v. Mid State Paving Co., 300 So.2d 794, 796 (Miss. 1974). On the other hand, the Commission is the judge of the credibility of the witnesses. Where, in such circumstances, the Commission with reason finds claimant's testimony untrustworthy or incredible, the Commission has authority to reject it. Hamilton Manufacturing Co. v. Kern, 242 So.2d 441, 444 (Miss. 1970); Hill v. United Timber & Lumber Co., 68 So.2d 420, 423 (Miss. 1953); V. Dunn, Mississippi Workers Compensation § 271 (3d ed. 1982). We have held that negative testimony concerning the cause of injury may be substantial evidence upon which a claim may be denied. Penrod Drilling Co. v. Etheridge, 487 So.2d 1330, 1331 (Miss. 1986); Fowler v. Durant Sportswear, 203 So.2d 577, 579 (Miss. 1967).
In this record, there is considerable circumstantial evidence from which the Commission might have found with reason that White's explanation of an accidental job-connected injury was not worthy of belief. Co-workers Jesse Carouthers and Lonzo McPherson were working in the same area and did not see White fall. Nor did White tell Carouthers or McPherson he had injured himself. James Ivy worked in the same department and did not see White fall. Ivy testified that White told him of the injury, but Ivy's testimony was substantially impeached because in an interview several days before his testimony he had stated to the contrary.
Next, White's conflicting and inconsistent testimony regarding the time he reported to the emergency room suggests the possibility of injury from a non job-related source. At the hospital, White gave no indication that his injury would be the subject of a Workers' Compensation claim. Instead, he filled out group insurance forms. That White should have known the difference is suggested by the fact that he had previously filed a Workers' Compensation claim. Indeed, another strand of evidence consistent with the Commission's finding is that White had filed a false Workers' Compensation claim for a prior employer and had concealed the fact of such prior employment and claim at the time he applied for work with Superior Products.
All of these matters before us, and including the fact that White made no report of injury to his employer until well after the fact, suggests affirmance. Under the totality of the circumstances reflected by the record, we may not with fidelity to limitations upon our scope of review say that the Commission's conclusions on the ultimate issue in this case are clearly erroneous. Though doubt is necessarily present in the review of a case such as this, *928 we are not left with the firm and definite conviction that a mistake has been made.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, SULLIVAN, ANDERSON, GRIFFIN and ZUCCARO, JJ., concur.