THOMAS, P.J.,
for the Court:
¶ 1. Gloria Ellis appeals the Alcorn County Circuit Court’s decision affirming the Mississippi Workers’ Compensation Commission’s denial of Ellis’s claim for compensation for having failed to make a prima facie case of a compensable injury. *27 Aggrieved, Ellis assigns the following issue of error for review:
I. WHETHER SUBSTANTIAL EVIDENCE EXISTED TO SUPPORT THE ORDER OF THE FULL COMMISSION, DENYING BENEFITS TO CLAIMANT.
Finding no error, we affirm.
FACTS
¶ 2. Gloria Ellis filed her petition to controvert on April 29, 1994, alleging she was injured while working in the course and scope of her employment at Salem Sportswear Manufacturing Co. in Rienzi, Mississippi on October 12, 1992. At the time of the alleged injury, Ellis was employed as a seamstress performing one of several manufacturing steps involved in producing various items of clothing apparel for Salem. Ellis’s step in the production line, setting pockets, involved using a straight needle machine to sew pockets onto shorts.
¶ 3. Prior to that date, Ellis had at times assisted in the shipping department on weekends to earn extra pay. Ellis testified that while working one Saturday in mid-August of 1992, she experienced a burning sensation in her neck as she was folding and packaging various plant products for shipment. Ellis testified that she informed the shipping supervisor, Liz Moore, and her production line supervisor, Charlene Chaffin, that same day but that she nevertheless continued to work the remainder of that day. However, both Moore and Chaffin denied ever being personally informed by Ellis that she had injured her neck while working in the shipping department. Each did, however, acknowledge that they each had heard others speak of Ellis’s complaints of pain. No documented claim of a work related injury was filed by Ellis with Salem concerning the alleged August 1992 incident.
¶ 4. Ellis further testified that she sought treatment from Dr. Scott Segars, a general practician, a few days later, on August 17, 1992, concerning the alleged neck injury in addition to some unrelated kidney problems. When questioned on this matter in his deposition, Dr. Segars testified that Ellis’s medical records do not indicate her stating that the alleged neck injury was the result of a work related injury nor could he recall Ellis ever stating any cause for the injury to him during the August 17, 1992 examination. Dr. Segars did state, as is reflected in Ellis’s medical records, that Ellis had previously been to see him seeking treatment on August 1, 1992 for a urinary tract infection, dyspa-reunia and for lower back pain related to Ellis’s attempt to help move her injured son following his motorcycle accident. Ellis disputes having relayed that information concerning her son’s accident to Dr. Segars as a complaint of lower back pain and that the notation regarding the same in her medical records must have originated from a casual conversation with Dr. Segars’s staff prior to her examination regarding how her son was improving. Ellis did, however, admit on cross-examination that she never informed Dr. Segars that the alleged neck injury was work related during the August 17, 1992 visit. Ellis explained that Dr. Segars did not ask her how she had injured her neck; therefore, she did not tell him. Ellis also testified that a reoccurring “crick” developed in her neck following the mid-August incident and that the “crick” would usually appear in the morning hours after she awoke.
¶ 5. On October 12, 1992, Ellis testified that she awoke that morning with the same reoccurring “crick” in her neck, but nevertheless proceeded to go about her morning routine and went to work at Salem. After approximately two hours into the work day, Ellis testified that she and another employee, Mary Ann Dix, whom Ellis described as a close friend, engaged in productive competition to see who could complete the most work. Ellis’s pay was, in part, based on the amount of clothing product that she could produce. Ellis testified that as she lifted a completed bundle of thirty-six extra large shorts and started to pitch them into the completion bin, she *28 experienced a sharp pain in her neck so severe that it caused her to slump over her sewing machine almost causing her to blackout. Ellis testified that as she began to cry, Dix, who was operating a machine to her left, came to her aid and summoned Charlene Chaffin, their production supervisor. Ellis further testified that she stated to Chaffin that she was in need of a doctor and that permission was given by Chaffin for her to leave work and seek medical attention.
If 6. However, when questioned whether she remembered anything about Ellis’s last day on October 12, 1992, Dix testified that she did not remember anything about Ellis’s alleged injury or calling Chaffin to the production line to see about Ellis. Dix stated that she only remembers Ellis getting up and leaving work to see a doctor. Likewise, Chaffin testified that she neither remembers Dix calling for her to see about Ellis nor does she remember Ellis reporting any injury to her that day or any other day while she worked at Salem.
¶ 7. Ellis continued her testimony concerning the events immediately following her alleged injury and stated that she went to the plant lobby to rest until she was able to drive home and that during this time Dix and Chaffin sat with her. However, Dix and Chaffin testified differently, each stated that they had no recollection of that event.
¶ 8. Ellis also testified that she believes that Tim Wiygul, the plant manager, was also present while she waited in the lobby. However, when he too was asked in his deposition whether he had any personal knowledge of the events surrounding Ellis’s alleged October 1992 injury he testified that he neither personally knew of any injury suffered by Ellis in either August or October nor did he ever receive any report that she had received any type of a work related injury. Wiygul testified that it was not until December of 1992, when Ellis’s attorney called him, that he became aware that Ellis was asserting that she had suffered a work related injury while employed at Salem.
¶ 9. Shortly thereafter, Ellis proceeded to drive herself home, but stated that she was in such excruciating pain that she was forced to stop several times along the side of the road due to the pain. She eventually made it to her residence and sought aid from her cousin who drove her to Dr. Segar’s office. Dr. Segar examined Ellis ánd prescribed some medication to alleviate her complaints of pain. Ellis returned two days later with continuing complaints of pain and as a result Dr. Segar referred Ellis to Dr. Tom Miller, a neurosurgeon, whom she saw about a week later. Dr. Miller testified that Ellis only initially informed him of an injury she had received several years earlier and that Ellis did not advise him of any recent work related injury until about a month after he had began treatment. Ellis first informed Dr. Miller of the October 12, 1992 incident on November 25,1992.
¶ 10. Dr. Miller continued to treat Ellis until April 1994 when he opined that the herniated disc no longer impinged on the nerve root, but that due to Ellis’s continued complaints of pain he referred her to Dr. Timmons, a pain specialist for further evaluation of her condition and the possibility of treatment at a specialized pain clinic. Following treatment by Drs. Miller and Timmons, Ellis came to be under the charitable treatment of Dr. Daniel Broo-koff, a board certified oncologist and pain specialist. Dr. Brookoff opined that satisfactory treatment of Ellis’s condition, myo-fascial pain syndrome which resulted from the October 12, 1992 injury, would require continued nerve block treatments and narcotic medications to alleviate her pain. Dr. Brookoff further opined that while Ellis had reached maximum medical recovery, the prognosis of her returning to the work force was not good.
¶ 11. Ellis’s petition to controvert was heard before Administrative Law Judge Lydia Quarles on March 21, 1996. On April 17, 1996, the administrative law *29 judge issued her opinion denying Ellis workers’ compensation benefits on the basis that Ellis had failed to establish a prima facie case of compensable injury. Following Ellis’s appeal to the Full Commission on April 17, 1996 and the subsequent hearing and review of Ellis’s appeal, the Full Commission affirmed Judge Quarles’s opinion of April 17, 1996 denying Ellis benefits on September 11, 1996. Ellis shortly thereafter appealed the Full Commission’s order to the Alcorn County Circuit Court. The circuit court affirmed the Full Commission’s decision denying Ellis compensation benefits on the basis that the decision did not contain any prejudicial errors of fact or law. From the circuit court’s ruling, Ellis appeals to this Court.
ANALYSIS
I.
WHETHER SUBSTANTIAL EVIDENCE EXISTED TO SUPPORT THE ORDER OF THE FULL COMMISSION, DENYING BENEFITS TO CLAIMANT.
¶ 12. We are asked to review the decision of the Alcorn County Circuit Court affirming the administrative judge’s and the Full Commission of the Mississippi Workers’ Compensation’s rulings denying workers’ compensation benefits to Gloria Ellis. The circuit court concluded that the Commission’s decision denying compensation for Ellis’s alleged work related injury was supported by substantial evidence and was without prejudicial errors of fact or law. The administrative judge based her decision upon numerous discrepancies in the testimony, including:
In this case, it is only testimony of the claimant which establishes a mid-[August], 1992, injury, or an injury occurring on October 12, 1992. Her uncorroborated testimony stands alone to support her claim.
On the other hand, five co-employees have testified in contradiction of the claimant, even those individuals whom the claimant identifies as the major actors in the saga of her October 12 injury. While the claimant testified that Mary Ann Dix, her friend and co-worker, witnessed the occurrence of the injury, saw her lying against her machine, saw her crying, and summoned help (in the form of the supervisor, Charlene Chaffin), Ms. Dix has no recollection of anything of the sort. Nor does Ms. Chaffin, even though the claimant testified that Ms. Chaffin offered to punch out for her and that both Ms. Chaffin and Ms. Dix sat with her in the lobby before she, with trepidation, determined to drive herself home. The fact is that while the claimant testified that she sustained an accidental injury on one or two occasions in the fall of 1992, this testimony is not corroborated by any other recorded testimony except her physicians who recorded her history— and note is here made that the history given to her treating physicians is not convincing. Dr. Segars reports no history at all relative to a work-related injury; Dr. Miller reports that he was given a history of work-relation over a month after he began treating her, and then it is more of a history of the lifting injury which allegedly occurred in shipping than the October 12 injury; Dr. Brookoff reports a dual injury history and it is noted that this physician had the benefit of Dr. Miller’s notes for obtaining the history.
¶ 13. In addressing the decisions previously entered against her claim, Ellis argues that the evidence presented before the administrative judge overwhelmingly tilts in her favor to support her claim that the injury was causally related to her employment or was contributed to by her employment under the “arising out of and in the course of’ requirement for proving a work related injury. Ellis further argues that the evidence presented also overwhelmingly supports a finding that she is totally and permanently disabled as a re- *30 suit of her work related injury, dating from October 12,1998.
Under settled precedent, courts may not hear evidence in compensation cases. Rather, their scope of review is limited to a determination of whether or not the decision of the commission is supported by the substantial evidence. If so, the decision of the commission should be upheld. The circuit courts act as intermediate courts of appeal. The Supreme Court, as the circuit courts, acts as a court of review and is prohibited from hearing evidence or otherwise evaluating evidence and determining facts; ... “[WJhile appeals to the Supreme Court are technically from the decision of the Circuit Court, the decision of the commission is that which is actually under review for all practical purposes.”
As stated, the substantial evidence rule serves as the basis for appellate review of the commission’s order. Indeed, the substantial evidence rule in workers’ compensation cases is well established in our law. Substantial evidence, though not easily defined, means something more than a “mere scintilla” of evidence, and that it does not rise to the level of “a preponderance of the evidence.” It may be said that it “means such relevant evidence as reasonable minds might accept as adequate to support a conclusion. Substantial evidence means evidence which is substantial, that is, affording a substantial basis of fact from which the fact in issue can be reasonably inferred.”
Delta CMI v. Speck, 586 So.2d 768, 772-73 (Miss.1991) (citations omitted).
¶ 14. In support of her argument that the evidence presented before the administrative judge overwhelmingly supports her claim of a compensable and causally related work injury “arising out of and in the course” of her employment, Ellis relies on Hedge v. Leggett & Platt, Inc., 641 So.2d 9 (Miss.1994). Ellis argues that regardless of any previous industrial accidents she may have suffered prior to the incidents in August and October of 1992 or injuries she
may have recently suffered while helping lift her son after a motorcycle accident, that these incidents are irrelevant since she was injured while at work. Ellis argues that to establish the “in the course and arising out of’ elements, she need only establish that her employment at Salem accelerated or contributed to her injury.
¶ 15. In Hedge, the Mississippi Supreme Court reversed the judgment of the circuit court which had affirmed the Workers’ Compensation Commission’s denial of benefits to her. The supreme court held that once Hedge had established a prima facie case of disability, the burden of proof shifted to her employer, Leggett & Platt. The court further held that Leggett & Platt failed to rebut affirmative evidence of a causal connection between the workplace and the injuries, as well as resulting disability, sustained by Hedge. Hedge, 641 So.2d at 10. In finding that Hedge had established a prima facie case of an accidental work related injury, the court was unquestionably persuaded by the corroborating testimony of Beatrice Merritt:
Betty’s testimony was uncontroverted with regard to the pain and shortness of breath which she experienced while working in the pillow and mattress departments at Leggett & Platt in May of 1988, February of 1989, and on July 28, 1989. She described incidents which consisted of the onset of pain in her side and back, along with shortness of breath, while she performed her assigned duties at Leggett & Platt. The validity of these incidents was corroborated by Merritt, one of her co-workers. Leggett & Platt did not contradict Betty’s contention that the incidents at work occurred as she claimed. Consequently, Betty satisfied the burden of proving that she suffered an accidental injury while at work.
Hedge, 641 So.2d at 13 (emphasis added).
¶ 16. In this light, Ellis’s argument for similar treatment to the case sub judice under Hedge fails. Ellis’s testimony was controverted with regard to the events *31 which transpired at the time of her alleged work related injury in August and October of 1992 by no less than two of her fellow co-workers and by three of her supervisors, the plant manager included. When questioned in their respective depositions whether each could recall any details of either of the incidents in August of 1992 or October of 1992 as their personal knowledge may reflect, none could substantiate the details of the incidents as testified to by Ellis. Therefore, Ellis, unlike Hedge, failed to substantiate her claims with corroborating testimony from the very persons whom she testified she had reported the incident to in August of 1992 or whom she testified had witnessed her injury in October of 1992 and further provided assistance and comfort to her immediately after her alleged injury.
¶ 17. We are ever mindful of the need for sensitivity when the claimant is the sole witness testifying to a claim for compensation arising from a work related injury. “[Ujndisputed testimony of a claimant which is not so unreasonable as'to be unbelievable, given the factual setting of the claim, generally ought to be accepted as true.” White v. Superior Products, Inc. 515 So.2d 924, 927 (Miss.1987); Myles v. Rockwell Intern., 445 So.2d 528, 536 (Miss.1983); Edwards v. Mid-State Paving Co., 300 So.2d 794, 796 (Miss.1974). However, as judge of the credibility of the witnesses, the Commission has the authority to reject testimony in circumstances which demonstrate a lack of trustworthiness or that which is incredible. White, 515 So.2d at 927; Hamilton Mfg. Co. v. Kern, 242 So.2d 441, 444 (Miss.1970); Hill v. United Timber & Lumber Co., 68 So.2d 420, 423 (Miss.1953); V. Dunn, Mississippi Workers’ Compensation § 271 (3d ed.1982). The supreme court has held that “negative testimony concerning the cause of injury may be substantial evidence upon which a claim may be denied.” White, 515 So.2d at 927; Penrod Drilling Co. v. Etheridge, 487 So.2d 1330, 1331 (Miss.1986); Fowler v. Durant Sportswear, Inc., 203 So.2d 577, 579 (Miss.1967).
¶ 18. In this case the claimant’s testimony is uncorroborated and further overwhelmingly contradicted by the very persons whom the claimant testified were both eye witnesses to, and active participants in, the events surrounding the alleged injury. The Commission has the authority to reject such claims as the facts and evidence presented may necessitate. We hold that substantial evidence was present, as is evidenced by the facts of this case, from which to support the administrative judge’s decision to deny claimant’s claim for compensation resulting from an alleged work-related injury. This assignment of error is without merit.
¶ 19. THE JUDGMENT OF THE AL-CORN COUNTY CIRCUIT COURT IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING AND SOUTHWICK, P.JJ., COLEMAN, DIAZ, IRVING, LEE, AND PAYNE, JJ„ CONCUR.
McMILLIN, C.J., AND BRIDGES, J, NOT PARTICIPATING.