# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2008-CT-01224-SCT

*WADE SHORT*

*v.*

*WILSON MEAT HOUSE, LLC AND*
*BRIDGEFIELD CASUALTY INSURANCE*
*COMPANY*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 06/30/2008 |
| TRIAL JUDGE: | HON. LAMAR PICKARD |
| COURT FROM WHICH APPEALED: | COPIAH COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JOHN HUNTER STEVENS |
| ATTORNEY FOR APPELLEES: | PETER L. CORSON |
| NATURE OF THE CASE: | CIVIL - WORKERS' COMPENSATION |
| DISPOSITION: | THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED. THE DECISION OF THE MISSISSIPPI WORKERS' COMPENSATION COMMISSION IS REINSTATED AND AFFIRMED - 06/17/2010 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**DICKINSON, JUSTICE, FOR THE COURT:**

¶1. The Mississippi Workers' Compensation Commission denied an employee's claim. The Circuit Court of Copiah County, sitting as an appellate tribunal, affirmed. The Court of Appeals reversed. We granted certiorari and now reverse the Court of Appeals and reinstate the Commission's decision.

**FACTS AND PROCEDURAL HISTORY**

¶2.     For approximately twenty-eight years, Wade Short worked at Wilson's Meat House,[1] a slaughterhouse and retailer of meat, meat products (such as sausage), and other foods.[2] In addition to his regular duties in the meat-processing area, Short regularly filled in for vacationing coworkers on the "kill floor," where the slaughtering was done and where the wages were higher.

¶3.     On December 1, 2005, Jack Wilson, Jr. (whose family owned Wilson's) received, for Christmas, a large wooden desk which had been built by Mike Welch, who was Short's supervisor. Several employees, including Welch and Willie Keyes, unloaded the desk,[3] which weighed 150 to 200 pounds, from a truck.  Short claims that as he was helping carry the desk, he heard a popping sound in his neck. He claims he told Welch, who called him a wimp and told him to carry the drawers. The workers removed the drawers and turned the desk on its side to move it through a door.

¶4.     When Short got home, he told his wife that he was in great pain. They decided that he should go to the hospital. Short's statements on the timing of the events that followed were inconsistent,[4] but according to hospital records, he went to the emergency room on December 12, 2005. X-rays showed several problems, including two herniated discs. Short

---

[1] Although this case is styled "*Wade Short v. Wilson Meat House, LLC* and *Bridgefield Casualty Insurance Company*," the name of the employer is actually Wilson's Meat House, LLC.

[2] Bridgefield Casualty Insurance Company, Wilson's workers' compensation insurance carrier, is the co-respondent in this action.

[3] Contrary to the testimony of several employees, Short testified he also was involved in helping move the desk.

[4] Short, who is illiterate, stated that he was "not good with dates."

2

was given a prescription for pain medication and – because he had missed a day of work to go to the hospital – a doctor's excuse. The excuse allowed him to return to work the following day, but limited him to lifting no more than five pounds.

¶5.	The next day, Short resumed his usual duties at Wilson's, despite the lifting limitation. He said he gave the work excuse to Tammy Wilson Stowe,[5] who handled employee-related clerical matters for Wilson's. Stowe testified she saw the document from the doctor, but did not notice the restriction.

¶6.	Short made several contradictory statements concerning the onset of his pain. During a January 9, 2006, followup visit to his doctor, Short stated that he had been experiencing neck pain radiating into his left leg and arm for three months (meaning since early October, 2005). During a January 11, 2006, physical therapy session, Short said that his pain began on December 16, 2005, when he helped lift a desk at work. On February 20, 2006, Short claimed to medical personnel that he had been having left arm pain for two and a half years, and that he had new pain between his shoulder blades that radiated into his left side.

¶7.	Short returned to the doctor several times during the spring and summer of 2006. On July 31, 2006, during a presurgery doctor visit, he said that numbness in both hands — which he claimed had begun in December 2005 because of heavy lifting — was causing him to drop things. On August 9, 2006, a neurosurgeon fused several of Short's vertebrae.

¶8.	On August 29, 2006, Short filed a Petition to Controvert with the Mississippi Workers' Compensation Commission, alleging that Wilson's had failed "to notify insurance [carrier] of claim and pay benefits required by Act." He also filed a motion requesting

_____

[5] Stowe is a member of the Wilson family.

3

"emergency relief," stating that he was in straits following surgery, unable to buy food and other necessities.[6] For reasons unexplained in the record, a hearing on the motion that was scheduled for November 27, 2006, was canceled and rescheduled for December 1, 2006.

¶9. Another notice found in the record scheduled a hearing "on the merits" for January 12, 2007. Although the record contains a transcript of a hearing held on that date, nothing in the record indicates that more than one hearing was held.

¶10. At the hearing, witnesses provided conflicting accounts of whether Short helped carry the main part of the desk, or just the drawers. Ultimately, all the witnesses except Short stated that they could not remember. All except Short agreed that he had carried the drawers at some point. Short, however, said he and another employee had carried the desk itself.

¶11. Short testified that — although he had experienced back problems before the desk-moving incident — the pain had never been severe enough to prevent him from working. He said that he had managed it with pain pills. According to Short, even though he told his supervisor and coworkers he was in pain, he was not given light duty. Other witnesses testified that Short never had said his pain was bad enough to restrict his work; that he did not seem to be impaired; and that he regularly had requested work on the kill floor which, while physically difficult, paid more than other work in the plant. At the time of Short's alleged injury, his pay averaged $460.02 a week.

¶12. Several witnesses, including Short, testified about Short's activities away from Wilson's. Short testified that his wife had an arrangement with the owner of a self-storage

_____

[6] This motion was styled as "Motion to Compel Payment of Temporary Total Disability Benefits and Medical Treatment." Within the text of the motion is the phrase: "this Motion for Emergency Relief."

4

warehouse to clean out units when renters vacated and left things behind. She kept the items — which ranged from large appliances such as refrigerators to small goods such as shirts — and sold them. Witnesses said that Short sometimes brought small items to Wilson's to sell to coworkers, but no one could recall seeing him bring large ones. Short testified that he had never cleaned out storage units on a regular basis. It was his wife's enterprise, and he had merely helped sometimes. He said that he had never injured his back doing so. Welch and Keyes, however, testified that Short and his wife were both actively involved in cleaning out storage units.

¶13. Witnesses, including Short, testified about an incident in the spring of 2006 wherein, as Short was unloading a horse from a trailer, something startled the horse, and it bolted. By Short's account, he wrapped the horse's lead rope around a basketball goal post to restrain it. Other witnesses described Short being dragged around for several minutes before he got the animal under control.

¶14. The administrative law judge issued an Opinion and Order on April 20, 2007, denying Short's claim. Short had been injured, the judge wrote, but he had not offered proof that his injury was work-related. Notably, Short failed to introduce evidence from a physician on the causation issue. Attempting to correct that deficiency, Short filed a Motion to Supplement the Record before the Commission. Without explanation, the Commission denied the motion and affirmed the ALJ's ruling.

¶15. Short appealed to the Circuit Court of Copiah County, which affirmed. The Court of Appeals reversed, finding substantial evidence in the record to support Short's claim,

especially in light of the caselaw that states that doubtful cases should be decided in favor of compensation. Wilson's petitioned for a writ of certiorari, which we granted.

## ANALYSIS

### I.

¶16. The scope and standards of review for workers' compensation cases are well-established. First, this Court reviews the decision of the Commission, not that of the ALJ, the circuit court, or the Court of Appeals. *Delta CMI v. Speck*, 586 So. 2d 768, 773 (Miss. 1991) (quoting Vardaman S. Dunn, *Mississippi Workmen's Compensation* § 286 n.39 (1982) ("[W]hile appeals to the Supreme Court are technically from the decision of the Circuit Court, the decision of the commission is that which is actually under review for all practical purposes.")).

¶17. Second, four disjunctive rules govern our review of an agency's conclusions. They must "remain undisturbed unless the agency's order; (1) is not supported by substantial evidence, (2) is arbitrary or capricious, (3) is beyond the scope or power granted to the agency, or (4) violates one's constitutional [or statutory] rights." *Public Employees' Ret. Sys. v. Dearman*, 846 So. 2d 1014, 1018 (Miss. 2003) (quoting *Miss. State Dep't of Health v. Natchez Cmty. Hosp.*, 743 So. 2d 973, 976 (Miss. 1999)) (brackets in original).

¶18. This Court has explained the first of these rules, the "substantial evidence standard," as follows:

> [R]eview is limited to a determination of whether or not the decision of the commission is supported by substantial evidence. If so, the decision of the commission should be upheld. . . . The Supreme Court . . . acts as a court of review and is prohibited from hearing evidence or otherwise evaluating evidence and determining facts.

6

*Speck*, 586 So. 2d at 772-73 (citing *Georgia-Pacific Corp. v. Veal*, 484 So. 2d 1025 (Miss. 1986); *Bruton v. Miss. Workmens' Comp. Comm'n*, 253 Miss. 694, 178 So. 2d 673 (1965); Dunn at § 272).

¶19.   Though "not easily defined," *id.* at 773,

> [s]ubstantial evidence . . . means something more than a "mere scintilla" of evidence, and that it does not rise to the level of "a preponderance of the evidence." It may be said that it "means such relevant evidence as reasonable minds might accept as adequate to support a conclusion. Substantial evidence means evidence which is substantial, that is, affording a substantial basis of fact from which the fact in issue can be reasonably inferred."

*Id.* (citing *United States v. Harper*, 450 F.2d 1032 (5th Cir. 1971) quoting *Johnson v. Ferguson*, 435 So. 2d 1191 (Miss. 1983)); *Babcock & Wilcox Co. v. McClain*, 149 So. 2d 523 (Miss. 1963); *State Oil & Gas Bd. v. Miss. Mineral & Royalty Owners Ass'n*, 258 So. 2d 767 (Miss. 1971)).

¶20.   The second rule states that a reviewing court may reverse if the Commission's order was "arbitrary or capricious." *Dearman*, 846 So. 2d at 1018. To some extent, this test overlaps the substantial-evidence standard. This Court explained, "'If an administrative agency's decision is not based on substantial evidence, it necessarily follows that the decision is arbitrary and capricious.'" *Dearman*, 846 So. 2d at 1019 (quoting *Fulce v. Pub. Employees' Ret. Sys.*, 759 So. 2d 401, 404 (Miss. 2000)).

¶21.   The third rule, that the scope of judicial review includes determining whether the Commission exceeded its authority, involves questions of law. Questions of law are proper for judicial review. Miss. Code Ann. § 71-3-51 (Rev. 2000); *Central Elec. Power Ass'n v. Hicks*, 236 Miss. 378, 388, 110 So. 2d 351, 356 (1959) (citing 42 Am. Jur. *Public Admin.*

7

*Law* § 210 ("Whether an administrative agency applies the legislative standards is an appropriate question for judicial decision. Moreover, the analytical basis of a distinction between reviewable questions of law and non-reviewable questions of fact is often narrow."))

¶22. The fourth rule concerns constitutional and statutory rights. This Court has regularly reiterated that it can review alleged violations of rights under both the state and federal constitutions. *See, e.g.*, ***Warren v. Miss. Workers' Comp. Comm'n***, 700 So. 2d 608 (Miss. 1997) (allegation of violation of due-process rights); ***Georgia-Pacific Corp. v. McLaurin***, 370 So. 2d 1359 (Miss. 1979) (same); ***Pathfinder Coach Div. of Superior Coach Corp. v. Cottrell***, 216 Miss. 358, 62 So. 2d 383 (1953) (no constitutional-rights violation when bigamous wife was allowed death benefits).

¶23. While courts always review questions of law de novo, ***Smith v. Jackson Constr. Co.***, 607 So. 2d 1119, 1125 (Miss. 1992), otherwise the standards of review in workers' compensation cases are highly deferential to the Commission. No court can reweigh the evidence; the Commission is the fact-finder and the judge of the credibility of witnesses. ***Barber Seafood, Inc. v. Smith***, 911 So. 2d 454, 461 (Miss. 2005) (citing ***Jackson Constr. Co.***, 607 So. 2d at 1123-24; ***Miller Transporters, Inc. v. Guthrie***, 554 So. 2d 917, 918 (Miss 1989)). In sum, "[N]either [the circuit court] nor the Mississippi Supreme Court is empowered to determine where the preponderance of the evidence lies when the evidence is conflicting. . . . Instead, [a court] must affirm the decision of the Commission where substantial credible evidence supports the Commission's order." ***Id.*** (citing ***Jackson Constr. Co.***, 607 So. 2d at 1124).

8

¶24.   Finally, deference means that unless a reviewing court finds that the Commission's decision was not based on substantial evidence; was arbitrary or capricious; exceeded the Commission's power; or violated a constitutional or statutory right, it cannot set aside a Commission order even if it would rule differently if it were the trier of facts. ***Walker Mfg. Co. v. Cantrell***, 577 So. 2d 1243, 1247 (Miss. 1991) ("That we may have found the fact otherwise, had we been the triers of the fact, is similarly of no moment, so long as the record contains credible evidence which, if believed, would take the Commission's decision out of the realm of the arbitrary.")

## II.

### A.   Whether the Commission's decision was supported by substantial evidence.

¶25.   Short first argues that the Commission's finding — that he failed to establish that he was injured on the job while helping carry the desk[7] — was not supported by substantial evidence.  We begin by looking at the evidence that tends to support the Commission's decision.

¶26.   On January 9, 2006, about a month after the incident, Short told medical personnel that he had been having pain for three months.  On July 3, 2006, Short stated that the pain had begun more than a year earlier, which would have been at least five months before the incident.  Short's supervisor, Welch, testified that he (Welch) and Keyes had carried the desk, and that Short had carried only the drawers.  Welch did not remember Short saying that he had been hurt.  Keyes also testified that he and Welch had carried the desk, and that Short

___

[7] Neither the ALJ, the Commission, nor the circuit court considered whether the act of carrying the drawers, as opposed to the body of the desk, would have been enough to cause Short's injury.  No testimony or evidence was adduced as to the weight or size of the drawers.

had carried only the drawers. Raglan testified that Short had carried only the drawers and not the desk itself. Jones testified that Welch and Keyes carried the desk, and that Short had carried only the drawers. Wilson's work records showed that Short continued to work from the second week of December 2005 through the second week of August 2006,[8] and that he took off about two weeks in March 2006 and one week in April of that year.

¶27. Other relevant evidence in the record includes the following:

1. Welch testified that he had known Short for thirty-two years and that "you believe half of what he tells you."[9]

2. Short continued to perform his usual work duties upon returning to work after the incident.

3. The number of animals Short slaughtered between December 2005 and August 2006 increased.

4. Keyes worked with Short during the period between the incident and Short's surgery. He testified that he never saw any indication that Short had trouble doing his work.

5. Jones, the state meat inspector, regularly observed Short working on the kill floor. He testified that he never saw any indication that Short had trouble doing the job.

6. Raglan testified that, from time to time over a period of several years, Short had complained of pain and numbness in his right shoulder.

---

[8] The ALJ's Opinion reads, "from the week ending on December 6, 2005, through the week ending on August 9, 2006." December 6, 2005, was a Tuesday and August 9, 2006, was a Wednesday, neither of which is conventionally regarded as the end of a week. Stowe testified that the company's pay period is Thursday through Wednesday, which would explain the phrase "the week ending on [Wednesday] August 9, 2006," though not "the week ending on [Tuesday] December 6, 2005."

[9] In the "Summary of Relevant Evidence" section of the ALJ's Opinion, the judge transposed this into "Welch . . . had *not* believed half of what [Short] told him." (Emphasis added.)

10

7.    Stowe testified that Short never notified her that he had been hurt on the job.

8.    Hospital records state that on February 20, 2006, about two and a half months after the incident, Short told medical personnel that he had been having left arm pain for two and a half years.

¶28.    Although the evidence listed above — all of which tends to support the Commission's decision — is substantial, we are mindful that context matters,[10] and that "we must look at all the evidence on both sides." ***Harpole Bros. Constr. Co. v. Parker***, 253 So. 2d 820, 823 (Miss. 1971).  However, we find very little evidence in the record supporting Short's claim. He testified that, as he helped move the desk, he heard a popping sound in his neck.  Short was the only witness who testified that his injury had occurred on the job.  Of course, this did not preclude the Commission from finding in his favor. *See, e.g.,* ***Alexander Smith, Inc. v. Genette***, 232 Miss. 166, 170-77, 98 So. 2d 455, 456-60 (1957) (Claimant was alone when he fell and was injured, so no other witness could have corroborated his testimony, but the Commission accepted it as true.).  When, however, such uncorroborated testimony is contradicted by other witnesses, or when evidence before the Commission casts doubt on the credibility of the testimony (as when the claimant has made conflicting statements), it is certainly within the discretion of the Commission to reject it.  ***Barnes v. Buckeye Molding Co.***, 247 Miss. 614, 615-16, 157 So. 2d 63, 63 (1963) (Coworkers testified that claimant had

---

[10] For instance, a physician's testimony that might, in isolation, "amount to substantial evidence supporting a finding by the commission, when considered with the entire evidence may lose much of its character and not rise to the position of substantial evidence." ***Shippers Express v. Chapman***, 364 So. 2d 1097, 1100 (Miss. 1978) (citing ***Harpole Bros. Constr. Co. v. Parker***, 253 So. 2d 820, 820 (Miss. 1971)).

told them she had hurt her back at home, so Commission was not bound to base its decision on claimant's uncorroborated testimony.).

¶29. In this case, the evidence before the Commission was conflicting. Short made inconsistent statements about when he first had back pain. His supervisor, based on an acquaintance of thirty-two years, cast doubt on Short's truthfulness.

¶30. The ALJ stated that, while it was clear that Short had been injured, the issue was whether he was injured at work. Ultimately, the ALJ found that, against the backdrop of the evidence detailed *supra*, the absence of evidence from a physician regarding a causal connection between Short's job and his injury was dispositive. We cannot say the Commission erred in this finding. In *Cole v. Superior Coach Corporation*, another back-injury case, this Court stated that "[t]he issues with reference to an alleged injury of this type are properly within the province of medical experts. In all but the simple and routine cases, it is necessary to establish medical causation by expert testimony." *Cole v. Superior Coach Corp.*, 234 Miss. 287, 291, 106 So. 2d 71, 72 (1958). This Court has also held:

> We recognize the rule that the workmen's compensation law should be broadly and liberally construed, that doubtful cases should be resolved in favor of compensation, and that the humane purposes the act seeks to serve leave no room for narrow and technical construction. But the rule of liberal construction may not be extended so as to eliminate the necessity of making proof prerequisite to recovery; and the humane spirit of the law does not warrant its extention [*sic*] beyond its legitimate scope.

*Ingalls Shipbuilding Corp. v. Howell*, 221 Miss. 824, 832, 74 So. 2d 863, 865 (1954).

¶31. The quantum of evidence supporting the Commission was considerable. That, coupled with the absence of evidence on the critical issue of causation, doomed Short's case, as his uncorroborated testimony was contradicted by other evidence. Therefore, we cannot say that

12

the Commission's decision — which was supported by substantial evidence — was arbitrary or capricious.

**B.      Whether the Commission erred in denying Short's Motion to Supplement the Record.**

¶32.    After the ALJ issued his Opinion and Order, Short filed a Motion to Supplement the Record. He sought to put before the Commission a letter from his surgeon which he said would establish a causal connection between his injury and the incident at work.  The Commission denied Short's motion.

¶33.    Short is correct that the Commission had the power to grant his motion.  This Court has held that "the Commission has the authority to receive live testimony and other evidence to supplement the record made before the AJ [administrative law judge]." ***Walker Mfg. Co. v. Cantrell***, 577 So. 2d 1243, 1246 (Miss. 1991) (citing MWCC Pr. Rule 9;  Dunn at § 369). Also, "[a]mendments are of course liberally allowed so that the truth may be ascertained." ***Crump v. Fields***, 251 Miss. 864, 871, 171 So. 2d 857, 859 (1965).

¶34.    The Procedural Rules of the Commission, however, set certain requirements for such a motion:

> Where additional evidence is offered on the review before the Full Commission, it shall be admitted in the discretion of the Commission. A motion for the introduction of additional evidence must be made in writing at least five (5) days prior to the date of the hearing of the review by the Full Commission. Such shall state with particularity the nature of such evidence, the necessity therefor, and the reason it was not introduced at the evidentiary hearing.

Mississippi Workers' Compensation Commission Procedural Rule 9, http://www.mwcc.state.ms.us/law-clms/_rules.asp#prodrule9 (last visited June 14, 2010).

13

¶35. Nothing in the three sentences that comprise the substance of Short's motion suggests the reason he did not introduce the evidence at, or prior to, the hearing.[11] It is understandable that the Commission viewed Short's motion as deficient, especially in light of the rule's particularity requirement. We cannot say that the Commission abused its discretion by requiring conformity with its rules and by denying Short's motion.[12]

¶36. Short argues that, under the Commission's Procedural Rule 8, evidentiary standards are relaxed. On this point, he is correct: "In compensation hearings the general rules of evidence shall be relaxed so as to permit the introduction of any relevant and competent evidence." Mississippi Workers' Compensation Commission Procedural Rule 8, http://www.mwcc.state.ms.us/law-clms/ rules.asp#prodrule8 (last visited June 15, 2010). This rule has been construed to apply to the Mississippi Rules of Evidence. For example, this Court has said that the statute "grant[s] authority to the Workmen's Compensation Commission to relax, *in its discretion*, the traditional common law and statutory rules of evidence in order to obtain a full development of the facts concerning each claim." ***Cooper's, Inc. of Miss. v. Long***, 224 So. 2d 866, 870 (Miss. 1969) (emphasis added). Again, we find no abuse of discretion; the Commission is entitled to require adherence to its procedural rules.

---

[11] Because the Commission's ruling was critical to Short's case, we required additional briefing on the question of why the evidence was not presented earlier. Short's counsel offered no explanation.

[12] The Commission's rules require that "[a] proposed order must accompany each non-dispositive motion." Mississippi Workers' Compensation Commission Procedural Rule 22(a), http://www.mwcc.state.ms.us/law-clms/ rules.asp#prodrule22 (last visited June 15, 2010). No such order appears in the record.

14

## CONCLUSION

¶37. Substantial credible evidence supported the Commission's decision. Furthermore, we cannot say the Commission abused its discretion in denying Short's Motion to Supplement the Record. Accordingly, we reverse the Court of Appeals and reinstate and affirm the decision of the Mississippi Workers' Compensation Commission.

¶38. **THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED. THE DECISION OF THE MISSISSIPPI WORKERS' COMPENSATION COMMISSION IS REINSTATED AND AFFIRMED.**

**WALLER, C.J., CARLSON, P.J., RANDOLPH, LAMAR, CHANDLER AND PIERCE, JJ., CONCUR. GRAVES, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION. KITCHENS, J., NOT PARTICIPATING.**

**GRAVES, PRESIDING JUSTICE, DISSENTING:**

¶39. I agree with the majority's finding that the Workers' Compensation Commission did not abuse its discretion in denying Short's Motion to Supplement the Record; however, I disagree that there was substantial evidence to support the Commission's finding that Short had failed to prove the elements of his workers' compensation claim. I must therefore dissent and would affirm the Court of Appeals' decision to reverse the Circuit Court's judgment, which affirmed the Commission's decision. Further, I would remand the case to the Commission for a determination of the extent to which Short has suffered a loss of wage-earning capacity due to his disability.

¶40. The record reflects that Short was a hardworking laborer at Wilson's Meat House (Wilson's) for more than twenty-five years. His supervisor testified that he was a good, productive employee throughout the entire length of his employment. Moreover, throughout his many years at Wilson's, despite experiencing pain before and especially after the desk

15

incident, Short never once filed a workers' compensation claim until the instant one. Rather, he "was taking pain pills and finding the work to make a living." He "kept trying to do his job the best [he] could," and he "[did] whatever they told [him] to do," whether it was to go slaughter animals on the kill floor or perform other tasks, like removing the meat from the bones of slaughtered animals. Short prided himself on being a hardworking, efficient butcher, and when Wilson's did not alter his duties to accommodate the five-pound weight restriction indicated on the work excuse he submitted, Short continued performing his customary duties until his condition worsened to the point of needing surgery. Only then did he finally file his workers' compensation claim. Furthermore, as explained below, it is undisputed that, on December 1, 2005, Short was involved in transporting the large wooden desk, and not a single witness was able to refute that Short, at some point, helped lift the desk itself and, in doing, suffered a neck and back injury.[13]

¶41. This Court has explained that in a workers' compensation case, the claimant has the burden of establishing the following elements by a fair preponderance of the evidence:

> (1) an accidental injury, (2) arising out of and in the course of employment, and (3) a causal connection between the injury and the death or claimed disability.

*Hardin's Bakeries v. Dependent of Harrell*, 566 So. 2d 1261, 1264 (Miss. 1990).

¶42. As the majority explained, this Court will disturb the Commission's order only if it is not supported by substantial evidence. *Id.; Hardaway Co. v. Bradley*, 887 So. 2d 793, 795

---

[13] The medical records reflect, and it is undisputed that, when Short went to the emergency room on December 12, 2005 (shortly after the desk-lifting incident), he was diagnosed with disk herniation. As the ALJ's Opinion stated: "The real question here is not whether Mr. Short has a cervical condition – he obviously does. The threshold issue is simply whether he was injured at work."

(Miss. 2004). "Stated differently, this Court will reverse the Commission's order only if it finds that order clearly erroneous and contrary to the overwhelming weight of the evidence." *Hardaway Co.*, 887 So. 2d at 795 (quoting *Fought v. Stuart C. Irby Co.*, 523 So. 2d 314, 317 (Miss. 1988)). As the majority also recognizes, in the workers' compensation realm, "doubtful cases should be resolved in favor of compensation." *Hardin's Bakeries*, 566 So. 2d at 1264.

¶43. I conclude that there was not substantial evidence to support the Commission's finding that Short had failed to prove the elements of his workers' compensation claim by a fair preponderance of the evidence. The overwhelming weight of the evidence indicates that Short suffered an accidental injury arising out of and in the course of his employment, and that there was a causal connection between that injury and his claimed disability.

¶44. First, not a single testifying witness was able to refute that, at some point, Short lifted the desk. As the Court of Appeals explained in its opinion of the instant case:

> . . . [All of Short's co-workers] stated that they simply could not remember whether Short lifted the desk or not. Short's supervisor, Welch, testified that he had built the large desk and had recruited Short and another co-worker, Willie Keyes, to deliver the desk to the second floor of Wilson's on December 1, 2005. . . .
> When specifically questioned by counsel if he remembered Short carrying the desk at any time, Welch testified that "[h]e really couldn't say. You know, *[Short] might have helped it over the table but I really couldn't say* . . . you know." Shortly thereafter, in an attempt to clarify a question, the ALJ stated to Welch, "Okay. You can't recall whether [Short] did or didn't [carry or lift the desk at some point]. Is that what you're telling us?" Welch responded, "Yes, sir." Early in Welch's testimony, the ALJ asked if Short was present at the time the desk was initially taken off of the truck that delivered the desk, and Welch testified that Short was present at that time. When the ALJ asked Welch what Short was doing during the time they were taking the desk into the building, Welch testified that "we [were] all, you know, standing there trying to get the desk in . . . . We [were] all on break so that's when we

17

[were] doing that. So I don't know . . . ." When responding to a later question posed by the ALJ whether he kept up with what Short was doing during all of this period, Welch responded, "[n]o, sir." Welch testified at least seven times that he "reckoned" or "assumed" events relating to Short's involvement or that he simply could not remember what Short was doing. Although, Welch distinctly testified that Short was present during the entire episode and that Short lifted and carried the desk drawers, he presented no definitive testimony that Short did not at some point, during the transportation of the desk, lift or carry the desk. Short testified that he helped to carry the desk twice, and after he told Welch that he felt something "pop" in his neck, Keyes helped carry the desk upstairs. . . . Welch testified that *he did not recall* if Short indicated that he had hurt himself after [he, Welch, got] the desk upstairs. He also testified that *he did not have any knowledge* that Short ever indicated that he hurt his neck as a result of lifting the desk. Also, he did not recall if Short had ever presented a doctor's excuse to take him off of work because of a work-related injury. However, when asked if he had heard that Short hurt his neck at work, he stated, "[y]ou know, I can't tell you who and I don't know exactly if they were joking or what, you know." The ALJ then attempted to clarify Welch's statement, and he asked Welch if he was saying that somebody might have told him that Short injured his neck at work. Welch answered, "[y]es, sir." . . .

. . . Keyes's testimony was much the same as Welch's testimony. Keyes testified that he did not remember whether Short had helped them lift the desk at any time. Also, Keyes testified that he could not even remember if Short had entered the elevator with them while they were moving the desk. After Keyes testified that Short lifted the drawers, . . . [Short's counsel asked Keyes: "If Mr. Welch testified that it's possible [Short] could have helped y'all get the thing up over the table, you wouldn't disagree with that if he said that was possible. You just don't remember." Keyes responded: "No, sir. I don't remember."] In the same vein, Keyes went on to testify that he could not remember whether Short had put the drawers down at any point. Neither co-worker distinctly remembered whether Short had helped lift the desk or not.

Jimmy Jones, a meat inspector for the Mississippi Department of Agriculture, was also present on the day in question. . . . Jones testified that he was not present downstairs when the desk was moved from the truck into the building, maneuvered over the table, through the narrow hallway, and into the elevator. Although Jones may have been able to speak about Short's involvement upstairs, he was unable to attest to or deny Short's account of what happened downstairs. Jones offers no contradiction to Short's statement of the events. In regard to carrying the drawers, Short testified as follows:

> After I picked [the desk] up I felt something that popped in my neck up there. I said, Mr. Curly [i.e., Mr. Welch], I feel something that popped in my neck.
>
> . . . .

18

> And he told me, . . . you ain't nothing but a wimp. . . . And
> that's when Mr. Bubba Keyes [came] and helped me and Curly
> to pick it on up and carry it up to the office. That's when Mike
> Welch told me to back up and start taking the drawers out of the
> desk, and carry it on up the stairs, me, him, and Bubba Keyes.

Short did not claim to have carried or lifted the desk while he was upstairs, and Jones was not downstairs to prove or disprove Short's account of what happened downstairs.

***Short v. Wilson Meat House, LLC***, 2009 WL 1668491, at *3-4 (Miss. Ct. App. June 16, 2009).

¶45.    In sum, Short's testimony about the occurrence of the work-related injury, while uncorroborated by other witnesses, was not refuted, and this Court has held that "the undisputed testimony of a claimant which is not so unreasonable as to be unbelievable, given the factual setting of the claim, generally ought to be accepted as true." ***White v. Superior Products, Inc.***, 515 So. 2d 924, 927 (Miss. 1987). *See also* ***Penrod Drilling Co. v. Etheridge***, 487 So. 2d 1330, 1333 (Miss. 1986) ("The claimant is competent to prove his own claim, and his testimony may be accepted without corroboration. It may be acted upon although disputed by other witnesses and if undisputed and not untrustworthy, must be taken as conclusive proof of fact.").[14] Therefore, Short's unrefuted, reasonable testimony about the alleged work-related injury he suffered while lifting the desk should be accepted as true.

---

[14] This Court has also explained that, "[o]n the other hand, if the claimant is uncorroborated as to the occurrence of a claimed accident and is shown to have made statements inconsistent with the claim, the commission is not bound to accept the testimony as the basis for an award." ***Penrod Drilling Co.***, 487 So. 2d at 1333. In the instant case, however, Short did not make statements inconsistent with his claim.

¶46. In addition to Short's testimony being unrefuted, his medical records support his testimony that he suffered the work-related injury, and that the injury caused his disability. As the Court of Appeals explained:

> . . . [M]edical records verify that Short visited the emergency room for treatment soon after the incident at work, and he reported to the triage nurse that his pain and numbness began after "lifting a heavy desk." Although the medical records do not contain a specific statement by a doctor that lifting the desk caused Short's injury, there is no statement or diagnosis by a physician, or other medical personnel, that contradicts Short's statement to the emergency room personnel about the cause of his pain. . . .
>
> . . . Short's medical records show that no doctor ever excluded the lifting incident as an event that may have exacerbated Short's condition. . . . Furthermore, multiple medical records reflect that Short consistently gave the same statement about the incident at work and his injury. At no point did he state that he was injured at home or during some other activity. . . .

*Short*, 2009 WL 1668491, at *5. Thus, Short presented uncontradicted testimony, supported by his medical records, that he had suffered a work-related injury, and that the injury had caused his disability. Notably, this Court has held that "it is not necessary that medical testimony [e.g., from Short's treating physician] be supplied to establish the cause and effect of an injury of the nature which the claimant says that he sustained."[15] *Marley Constr. Co., Inc. v. Westbrook*, 107 So. 2d 104, 108 (Miss. 1958). "A claimant, like any lay witness, may not undertake to make a prognosis, but he may state facts concerning his condition and these facts may be of such a nature as to enable the Board to determine the extent and duration of

---

[15] The injury suffered by the claimant in *Westbrook* was an injury in his lower back that he felt occur while he and a co-worker were lifting transite boards weighing from 175 to 200 pounds. *Marley Constr. Co., Inc. v. Westbrook*, 107 So. 2d 104, 105 (Miss. 1958). A few days following the incident, the claimant went to the doctor. *Id.* In other words, the fact surrounding the work-related injury in *Westbrook* are similar to the facts in the instant case.

the disability even in the absence of medical testimony." *Id.* (quoting *Yocum Creek Coal Co. v. Jones*, 214 S.W. 2d 410, 412 (Ky. Ct. App. 1948)).

¶47.     In addition, as the Court of Appeals aptly noted, there is a presumption that statements made by a person seeking medical treatment are truthful. *Short*, 2009 WL 1668491, at *5-6. This presumption of truthfulness is embodied in Mississippi Rule of Evidence 803(4), the hearsay exception allowing admission of statements made for purposes of medical diagnosis or treatment. *Id.* (citing Miss. R. Evid. 803(4)). Thus, it should be presumed that Short's reports to the emergency room nurse and his physical therapist that he had experienced pain and numbness after lifting a heavy desk were truthful.

¶48.     Therefore, the overwhelming weight of the evidence that was presented at the evidentiary hearing establishes that Short suffered a work-related injury that caused his disability, and an opinion from a medical expert is not required to establish the causation element of Short's claim.

¶49.     The arguments Wilson's presents in an attempt to refute Short's claims that he suffered the work-related injury and that it caused his disability lack merit. First, while it is true that during some of Short's doctor visits he reported that his pain began before the date of the desk-lifting incident,[16] that does not indicate, as Wilson's contends, that Short made

---

[16] As the Court of Appeals explained:

> The medical records reflect an entry on July 3, 2006, which states that Short described symptoms of weakness, numbness, and tingling for a little over a year, and an entry in January 2006 that states he experienced pain for three months.

*Short*, 2009 WL 1668491, at *7. The medical records also reflect that on February 20, 2006, Short reported having experienced pain for two and a half years.

21

conflicting statements. Rather, it simply supports Short's doctors' recorded opinions that Short had a preexisting condition of cervical disk degeneration, and this Court has held that "when a preexisting disease or infirmity of an employee is aggravated, lighted up, or accelerated by a work-connected injury, or if the injury combines with the disease or infirmity to produce disability, the resulting disability is compensable." ***Hedge v. Leggett & Platt, Inc.***, 641 So. 2d 9, 14 (Miss. 1994). As the Court of Appeals noted:

> . . . [T]here are multiple entries where Short told medical personnel that he experienced sudden pain after lifting the desk. A review of the medical records reveals that Short never gave any reason other than moving the desk for the sudden worsening of his pain, nor is there anything in the record that indicates that Short ever sought treatment for pain or weakness prior to the incident with the desk. It is imprudent to ignore multiple statements made to medical personnel for the purpose of seeking treatment because of statements about a prior pain or weakness.

***Short***, 2009 WL 1668491, at *7.

¶50. Wilson's effort to show that Short's disability was caused by an injury that had occurred outside the course of employment also fails. Wilson's suggests that Short's injury may have come about during Short's personal time, while lifting heavy items he and his wife removed from storage units or while being dragged by a horse; however, these suggestions are purely speculative and unpersuasive. Short testified that he never worked steadily cleaning out the storage units, and no witness testified that Short ever brought any large items from the storage units to work to sell, nor that they ever otherwise had seen Short in possession of large items from the storage units.[17] Furthermore, the incident with the horse

---

[17] Moreover, even if it were somehow established that Short was injured at some point prior to his first emergency room visit (on December 12, 2005) due to lifting an object from the storage units (or from anywhere, for that matter), it still would not disprove that he was injured on the job from lifting the desk. Additionally, as explained above, the fact that a claimant may have a

22

occurred months after Short initially went to the emergency room and reported that he was experiencing pain after having lifted a heavy desk.

¶51.　Wilson's also highlights the fact that, following the desk incident up until Short left Wilson's to have his surgical procedure, Short continued to perform his regular work duties well and seemed eager to work on the "kill floor," where he earned more money.[18] As the Court of Appeals explained:

> Short testified that he was taking pain medicine, and he did what he was told to do.  At one point during his cross-examination when asked what tasks he performed, he stated: "I do whatever they tell me to do, sir.  If they come tell me to go back there and hang some more sausage or whatever, I do what they tell me to do if I want my job."  He also testified that he would "work anywhere [he] c[ould] to make . . . a dollar."

*Short*, 2009 WL 1668491, at *7.  Like the Court of Appeals, I refuse to penalize a person for persevering in order to earn a living, and, as the Court of Appeals noted, Short is not the first claimant who continued to work after having suffered a compensable injury.  *Id.* (citing *Frito-Lay, Inc. v. Leatherwood*, 908 So. 2d 175, 178 (Miss. Ct. App. 2005); *Bryan Foods, Inc. v. White*, 913 So. 2d 1003, 1006 (Miss. Ct. App. 2005)).

¶52.　Lastly, Wilson's contention that Short never indicated that he suffered a work-related injury is incorrect.  As the Court of Appeals explained:

---

preexisting condition or injury (from, for example, having lifted something heavy at some time prior to the work-related injury at issue) does not necessarily bar recovery under workers' compensation law.

[18] Notably, it was another witness (Jones), not Short, who testified that Short liked working on the kill floor.  Short explained the following in response to a question about him working on the kill floor despite his worsening pain: "When they tell me, Mr. Short, you've got to go on the kill floor if I wanted my job I had to do what they tell me to do. . . . If I didn't I'd get sent home or else I'd lose my job, so I had to go where they tell me to go."

23

. . . [U]ndisputed testimony shows that shortly after moving the desk, Short presented a medical excuse to Tammy Stowe [a member of the Wilson family who handles Wilson's time and wage records, as well as workers' compensation claims] that indicated he had been treated at the University Hospital and that he should not lift anything heavier than five pounds until cleared by neurosurgery. Also, other co-workers testified that Short complained of back pain and other ailments throughout the months preceding his surgery. . . . Short also testified that he told his supervisor, Welch, that he had experienced a "pop" in his neck as well as pain while moving the desk, and he complained off and on at work during the following eight months, until his surgery, that he had hurt his neck.

*Short*, 2009 WL 1668491, at *8. Welch also testified that at some time after the desk incident but before his surgery, he gave Jack Wilson, the owner of Wilson's, a doctor's excuse indicating that he could not lift more than five pounds.

¶53. For the foregoing reasons, I conclude that there was not substantial evidence to support the Commission's finding that Short had failed to prove the elements of his workers' compensation claim, and I therefore dissent. Accordingly, I would affirm the Court of Appeals' decision to reverse the Circuit Court's judgment, which affirmed the Commission's decision, and I would remand the case to the Commission for a determination of the extent to which Short has suffered a loss of wage-earning capacity due to his disability.

24